Austin, *vs.* Watts & Hughes *et al.* (Cross Appeal.)

1. A testator's will contained this clause : " I give and bequeath to my daughter, M. J., two negro girls, (naming them,) *and after the death of my wife, my said daughter, M. J., to have $800 worth of property.*" The residuary clause was as follows: " All the rest and residue of my personal estate whatsoever and wheresoever, of what kind and quality soever the same may be, and not herein before given and disposed of, after the payment of my debts, legacies and funeral expenses, I give and bequeath to my wife, A. P., her executors, administrators and assigns, to and for their own use and benefit absolutely." The executors, after having paid the debts and specific legacies, had in their hands, undisposed of, property more than sufficient to pay the $800 to M. J., which they delivered over to the widow of the testator. *Held,* this discharged the executors from all liability to *M. J.,* it being the intention of the testator that the property *in specie* should be enjoyed by the widow during her life. But the property, in the hands of the widow, and of those purchasing from her with notice, if not without notice, was liable to the payment of the $800 legacy. As against M. J. each and every portion of the property in the hands of purchasers was charged with the whole amount of her legacy, if it was worth so much, although, as between different purchasers, contribution might be enforced.

*Appeal from Howard Circuit Court.*

This was a bill in equity, filed by Mary J. Austin, daughter of Garret Austin, deceased, against her father's administrators, B. Watts and R. Hughes, and against S. C. Major and G. Patrick, who had purchased from the testator's widow three slaves belonging to the estate, praying a decree for a legacy of $800, left her in her father's will, and that it might be paid by the administrators, or by the purchasers of the property, and for general relief.

Garret Austin, the father, made his will in March, 1839, and died shortly afterwards. The provisions of the will are stated in the opinion of the court. The will was proved in Howard county, and the defendants, Watts & Hughes, were appointed administrators with the will annexed. The wife survived the husband several years, and died a few months before the filing of this bill. Long before the death of the widow, the administrators had paid all the debts and legacies, except the plaintiff's $800 legacy, leaving in their hands undisposed of $87 in cash, and three slaves valued at $950, all of which they delivered over to the widow. About the year 1840, G. Patrick purchased of the widow two of the slaves, and in 1841, S. C. Major purchased the third, and sold her to some person unknown to the plaintiff, who removed her out of the state. Both Patrick and Major knew, when they purchased, that the slaves belonged to Garret Austin's estate, and were charged with the plaintiff's legacy. The above are substantially the facts, as admitted in the pleadings or proved on the hearing.

The court decreed to the plaintiff her legacy, with interest from her mother's death, to be paid by the defendants, Watts & Hughes, and dismissed the bill as to Patrick and Major. Watts & Hughes appealed from the decree against them, and the plaintiff appealed from so much of the decree as dismissed the bill as to Patrick and Major.

*P. R. Hayden*, for Watts & Hughes, Patrick & Major. 1. The $800 was not a vested legacy. It was not the intention of the testator that the complainant should have $800, unless there were that amount of his property or estate remaining undisposed of at the death of his wife. She had the disposal of it as absolute owner while she lived. As to vested legacies, and legacies not vested, see 4 Bac. Abr. 373, and authorities there cited. 3 Vesey, jr., 536, 543–4. 5 ib. 513–14. 2. If the first position be not correct, then at least the widow was entitled to the possession of the property while she lived, and the administrators were not only justified, but did right, in delivering possession to her, after payment of debts,

specific legacies, and expenses of administration.    3. No trust
in favor of the complainant is impressed upon the negroes in the
hands of the purchasers from the widow, because they purchas-
ed without notice.    They were not bound to take notice of the
will of the testator, and if they were, it showed that the widow
was entitled to the entire residuum of the estate, and they had
a right to conclude that the negroes were of that residuum.
Again, the property is not so described and identified in the
will, that a lien or trust could attach to it in favor of the com-
plainant.    2 Story's Eq. §1070-1-2-3-4, and notes.    Ib.
§1394.    *Constantine* v. *Constantine*, 6 Ves. 102.    10 Ves.
535-6-7.    4. If the defendants or any of them are liable as
trustees for the legacy sued for, a demand was at least neces-
sary.

*A. Leonard*, for Mary J. Austin.    The legacy now sought
to be recovered is admitted to be a valid legacy.    It is a gene-
*ral*, not a specific legacy.    It is payable out of the general
estate, *after* the payment of the specific legacies.    It is not a
reversionary interest in property, to take effect after the expira-
tion of a life estate, but a legacy payable in future, with a
residuary bequest to the widow.    The widow is the *residuary*
legatee, but by the proposed construction, the plaintiff in effect
becomes such.    The payment of this legacy is a legal obliga-
tion upon the *executors*, and the legal title to the property is
cast upon them for this purpose.

The debts and legacies are a charge, in equity, upon the es-
tate, and this is so because it is the legal duty of the executors
to apply the estate to that purpose.    The equitable charge
springs from the legal obligation of the executors to use the
property in that way, and, of course, is co-extensive with their
obligation.    If they are bound to pay the whole legacy, as long
as there is property for that purpose, the charge exists, too,
for the whole legacy, as long as there is any property subject
to the charge.    This charge, like all other charges and liens, is
not spread evenly over the whole mass, so that each part is re-
sponsible *only* for its due proportion, but every part, so far as

the creditors and legatees are concerned, (although it is otherwise among several owners, who have acquired the property subject to the charge,) is liable for the whole.

The plaintiff, then, had two remedies for her legacy — the legal obligation of the executors to pay it, and the remedy in equity, to enforce the charge against the property.

What now was the legal effect of the act of the executors in delivering the property, after payment of debts and specific legacies, into the possession of the widow, as the residuary legatee? Did it transfer the legal title, or did the executors retain the title, and merely allow her the use of the property until they needed it to pay the plaintiff's legacy? If they parted with the title, they made themselves liable. It is true, if the title did pass, the charge against the property, for the payment of the legacy, followed the legal ownership of the property into the hands of the widow, and purchasers from her with notice; and if the legacy can be satisfied out of the property, as that is the fund primarily liable, and is before the court to be decreed against, the executors may be discharged, not because they are not liable, but because what they were bound to see paid, can be paid without delay or inconvenience, out of the property primarily applicable to that purpose; and the purchasers cannot complain; they took the property with notice of the trust — with notice, in legal contemplation, that every part of the property was liable for the whole legacy—not as a mere security, but primarily, as the true, original and only debtor.

If, however, the executors did their duty and retained the title to pay the plaintiff's legacy when it fell due, the property is liable in the hands of purchasers, notice or no notice, and to the same extent that it would be liable in the hands of the executors. And so, in either event, the plaintiff is entitled to her whole legacy, without any abatement, either from the executors or the purchasers.

Austin *v.* Watts.

RYLAND, Judge, delivered the opinion of the court.

1. In this case, the first matter to be attended to is to discover the real intent of the testator, in the disposition of his property by will. He first makes bequests to his daughter and grand-daughter, and then gives the residue of his estate to his wife. This is the substance of the whole will. The provision made for the complainant is in these words : " I give and bequeath to my daughter, Mary Jane, two negro girls, one named Margaret and the other Gabriella, and after the death of my wife, my said daughter, Mary Jane, to have eight hundred dollars worth of property." The provision for the granddaughter is in these words : " I give and bequeath to my grand-daughter, Mary Jane, daughter of Nathan Pulliam and Lucy Ann Frances Pulliam, when she becomes of age, one negro girl named Rachel." The provision for the widow is in these words : " All the rest and residue of my personal estate whatsoever and wheresoever, of what kind and quality soever the same may be, and not herein before given and disposed of, after the payment of my debts, legacies and funeral expenses, I give and bequeath to my wife, Ann P. Austin, her executors, administrators and assigns, to and for their own use and benefit absolutely."

These three clauses constituted the whole will. After the settlement of the estate by the executors, and the payment of the debts of the testator, there remained in the hands of the executors three slaves—one a woman of forty years, with her child of some four years old ; the third, a boy, of about fifteen years of age, and money to the amount of eighty-seven dollars. These slaves and the small balance of money were delivered by the executors to the widow. She lived for several years after having received the property, and during her life the slaves were sold, either by her or for her debts ; the defendants, Major and Patrick, being the purchasers. This bill is brought against the executors, Hughes and Watts, on the ground that they are personally responsible for the legacy of

eight-hundred dollars, given by the will to the complainant, and Major and Patrick are made defendants as purchasers of the slaves from the widow, with notice of the complainant's rights, and responsible to satisfy her legacy, if the executors are not bound.

We must, in this case, as in all other cases of wills, ascertain the intent of the testator, and, as far as may be consistent with the rules of law, carry that intent into effect. For this purpose, we look at the whole instrument together, and regard the whole as one volition of the testator's mind, in which the last clause of the will was as much involved and as necessary to his intent as the first; and, where there is not an absolute repugnance between two clauses, both are to have effect.

If, in the bequest to his daughter, the intent of the testator was to give her not only the two slaves, but also the $800, as a present legacy, which was to be delivered over to her at her mother's death—the time of its payment being only postponed—then it would be difficult to avoid the conclusion, that it was the duty of the executors so to retain and secure the amount of it, that it would be certain to the legatee, when the mother died, and that they would be liable to her for the amount of the legacy, immediately upon the death of the mother. But it is to be remarked, that this legacy is not a legacy of money; it is $800 worth of *property*; this, evidently, means property which belonged to the testator, and therefore it is in the contemplation of the testator that the property would remain in specie at the mother's death. The daughter is to have, after the death of the mother, $800 worth of property : the property is not now ascertained, nor is property, at present having the value of $800, to be set apart to answer this legacy, but the value is to be ascertained after the death of the mother. When speaking of the slaves bequeathed to the daughter in the same clause, the language used is : "I give and bequeath to my daughter." When he speaks of the $800 worth of property, he says : "After the death of my wife, my said daughter to have $800 worth of property." The difference

in the words employed in reference to the two subjects, in the same sentence, furnishes some evidence that the testator did not intend to give to the daughter a right in the property mentioned in the latter part of the sentence, which would require its present appropriation for her benefit. When we turn to the residuary clause in favor of the wife, which is drawn in strong and comprehensive language, and which, from its structure, would appear to be the principal provision of the will, we find that the testator gives to his wife "all the residue of his personal estate, not herein before given and disposed of, after the payment of his debts, legacies and funeral expenses." The estate of this testator appears, from the record, to have consisted of some five negroes, besides those given to the daughter and grand-daughter, and some stock, household furniture, &c. Two of the slaves, together with the stock, furniture, &c., were sold for the payment of debts; and, upon a settlement of the administration, there remained in the hands of the executors $87, which, with the remaining slaves, valued at $950, constituted the residue of the estate. This reference is made to the condition of the estate, as allowable in some cases, to aid in the construction of a will; and by it, we see that, if the $800 was to be provided for and secured by the executors, out of the residue, after the payment of debts, before the widow should receive any thing under the will, then the clause of the will which is drawn with most care, and apparently designed to be very comprehensive, will almost entirely fail of making any provision for the widow. The testator evidently designed to make a present disposition of all of his property. He gave to his daughter and grand-daughter the slaves named in the will: he provides that his daughter shall, after the death of her mother, have a portion of his property, which shall then be worth $800. He gives all the residue of his property, not given or disposed of before, to his wife, subject to the payment of his debts and legacies. It is believed that the proper construction of this will is, to regard the clause relating to the $800, as intended by the testator to be satisfied out of

the residuum bequeathed to the mother; so that all the residuum, after the slaves given to the daughter and granddaughter are delivered to the legatees, shall be held to pass to the mother, subject to the payment of the debts, and the sum of $800 to be received by the daughter at the mother's death. This construction allows the mother to have the enjoyment of the residuum during her life, without any claim thereon by the daughter, while it gives to the daughter what the testator designed she should have, property of a certain value, at her mother's death. It charges the $800, for the benefit of the daughter, upon the property bequeathed to the mother, so that it shall ultimately be safe to her, while the mother shall have the enjoyment of the whole residue. The daughter's claim is not a title to any specific articles of property, but is a charge upon the whole residuum.

This is not regarded as a bequest of a life estate, with remainder over; for here there is no specific property in which the daughter has a remainder, and none in which, by the terms of the will, a life estate is given to the mother. If such had been the nature of the provision, it may be admitted to be the law that, where a residuum is bequeathed for life, with remainder over, if the property is perishable, or diminishing in quantity and value, it is the usual practice to sell the property and vest the proceeds, so as to give the interest only, to the tenant for life. *Gibson* v. *Botts*, 7 Ves. 89. *Fearns* v. *Young*, 9 Ves. 552. Williams on Executors, 1196. *Alcock* v. *Sloper*, 2 M. & K. 699. But this rule is not pursued, where it is the apparent intention of the testator that the property shall be enjoyed in the state in which it exists. *Pickering* v. *Pickering*, 2 Beav. 31. Where personal chattels are bequeathed to A., with remainder to B., A. will be entitled to the possession of the goods, upon signing a receipt, expressing that he is entitled to them for life, and that afterwards, they belong to B. *Slanning* v. *Style*, 3 P. Wms. 336. *Leek* v. *Bennett*, 1 Atk. 471.

In the present case, as the provision for the daughter is re-

garded as designed merely to create a charge on the residue bequeathed to the mother, the executors did not make themselves liable to the complainant, by delivering the property which was subject to this charge, to the widow; and therefore, the decree against them is reversed.

But the purchasers of the property, who, according to this record, took it with notice of this charge, are liable to the complainant for the amount of the legacy. It is not designed to decide the question, whether a purchaser from the widow of property which was subject to this charge, would only be bound by notice; but in this record, the notice of her title is sufficiently shown to have existed, and therefore, the purchasers are held liable, without discussing how far proof of notice was necessary. In the next place, it is necessary to determine how far these purchasers are liable to the complainant, and upon this point, there was a rule adopted in the outline of the opinion filed at the time judgment was rendered, which, upon more mature reflection, is believed to erroneous. It was there stated as the rule, that the purchasers were to contribute to satisfy the legacy, in the proportion that the property they purchased bore to the whole residuum which came to the hands of the widow.

The rule, which, upon further reflection, we think the correct one is, that, as against purchasers of portions of the residuum, which are together equal to the whole amount of the legacy, the complainant is entitled to her whole legacy, with interest from the mother's death. So far as the different defendants are purchasers of different portions of the property from the widow, at different values, they must account for their relative proportion of the amount to be paid to the complainant, according to the value of the part so held by each of them; and if the whole value of all the parts so purchased by the defendants, is equal to the amount of $800, at the mother's death, the defendants, Major and Patrick, must pay the whole amount, with interest from that time. The amount of their respective purchases appears to be greater than the amount of the com-

plainant's charge, and therefore, they must pay the whole; but between themselves, the proportion is to be ascertained by an account to be taken, to show the amount for which each is liable.

The decree of the Circuit Court is reversed, and the cause is remanded, with directions to that court to dismiss the bill, as to the defendants, Hughes and Watts, and to render a decree against the defendants, Major and Patrick, in favor of complainant, for the sum of $800, with interest from the death of her mother, as against each defendant, in proportion to the amount of their respective purchases, with the concurrence of the other judges.