LILLY *et al.*, *Trustees*, v. MENKE *et al.*, *Appellants.*

In Banc, December 22, 1894.

1. **Will**: DEVISE TO WIFE: ELECTION OF STATUTORY SHARE: REMAINDER. Where a testator devises his estate to his wife for life with remainder over of one half to a religious association and one half to the heirs and legal representatives of his wife and the latter renounces her rights under the will and elects to take, in her right of dower under Revised Statutes, 1889, section 2190, one half of the estate absolutely, subject to debts, the will operates only upon the remaining half of the estate and the religious association as devisee in remainder will take only one fourth of the whole.

2. **Partition**: DEFECT OF PARTIES: APPELLATE PRACTICE. A petition for partition which discloses the interests of persons not made parties to the suit does not state a good cause of action, either under the statute or in equity, and a decree entered without bringing in such parties is erroneous on its face and will be reversed on appeal, although no motion in arrest or exception was made in the trial court and preserved in the bill of exceptions.

3. ———: PETITION. A petition in partition by plaintiffs in behalf of an unincorporated church association should aver that the plaintiffs as trustees of the church "sue for themselves and all other members of said church."

4. ———: ———: CLAIM FOR RENTS AND PROFITS. In an action for partition an averment that defendants have been in possession of the property and have received the rents and profits thereof is not sufficient to support a claim for the rents, in the absence of an averment that plaintiff was denied a joint occupancy of the premises.

5. ———: WASTE: MISJOINDER. An action for waste against one in possession of land as executor under the will of the former owner is improperly joined with one for partition of the property to which he has been made a party in his personal capacity.

6. ———: ———: MARRIED WOMAN. A married woman is not liable for waste committed by her husband in his capacity as executor.

7. **Administration**: ORDER OF DISTRIBUTION: NOTICE. An order of distribution in the settlement of a decedent's estate is void as against distributees who are not notified as required by Revised Statutes, 1889, sections 242, 243.

8. **Administrator Pendente Lite:** FINAL SETTLEMENT: DISTRIB-
UTEES: NOTICE. An administrator *pendente lite* is not authorized to
make a final settlement, because the regular executor is dead, with
some of the distributees, which will be binding on all the distributees
unless he is acting as administrator with the will annexed and the
required notice of such distribution is given to all entitled to it.

*Appeal from Livingston Circuit Court.*—A. W. MULLINS,
*Esq.*, Special Judge.

REVERSED AND REMANDED.

*Davis, Loomis & Davis* for appellants.

(1) The will of Ilett Tobbein gave a life estate in
all his property to Catherine Tobbein, and on his death,
one half to her heirs in fee, and one half to the Catholic
church at Lexington. Catherine Tobbein renounced
the will and took, under the statute, one half of the
whole estate in fee. Her renunciation of the will could
only affect the rights which she acquired under the
will, and could not affect the rights which her heirs at
law acquired thereunder; therefore she took one half
of the original estate in lieu of the life estate given her
by the will, which leaves the other half of the estate to
be divided between her heirs at law and the Catholic
church at Lexington, according to the terms of the
will. Which, according to the construction given to
the will by the lower court, and by the plaintiffs, the
Catholic church at Lexington takes one half of the
entire original estate of Ilett Tobbein, deceased, and
the heirs at law of Catherine Tobbein take nothing,
under the will of Ilett Tobbein. *In re Cunningham's
Estate*, 20 Atl. Rep. (Pa.) 714, 716; *In re Rawlings'
Estate*, 47 N. W. Rep. (Iowa) 992, 993; 1 Redf. on
Wills [3 Ed.], p. 429, note; *Allen v. Hannum,* 15 Kan.
470; 2 Jarman on Wills [5 Am. Ed.], p. 43, note;
*Carder v. Commissioners*, 16 Ohio St. 354, 367; *Logan*

*v. Logan*, 17 Pac. Rep. 99; *Brown v. Hunt*, 12 Heiskell
(Tenn.), 404; *Wood v. Wood*, 1 Metc. (Ky), p. 512.
(2) There can be no partition unless all parties whom
the records show have an interest in the property sought
to be partitioned, are made parties to the suit, and are
brought into court by proper process. The heirs at
law of Ilett Tobbein, deceased, who were made parties
in the original petition of the plaintiffs, and the heirs at
law of Catherine Tobbein, who are devisees under the
will of Ilett Tobbein, deceased, and the devisees and
legatees of Catherine Tobbein, deceased, are necessary
parties to this suit. R. S. 1889, sec. 7135; *Dameron v.
Jameson*, 71 Mo. 97; *Estes v. Nell*, 108 Mo. 172; Free-
man on Cotenancy and Partition, sec. 463; *Barney v.
Baltimore*, 6 Wallace, 284; *Shields v. Barrow*, 17 How.
(U. S.) 130. (3) The plaintiffs seek to require Maria
T. Menke, and the judgment and the decree of the lower
court requires her, to bring into hotchpot and have it
counted against her in the distribution of the estate of
Ilett Tobbein, deceased, $10,278.28, which was never
in fact received by her, nor alleged, nor proven, nor
even claimed to have been received by her; was never
in her possession, nor under her control, and from
which she never derived one dollar benefit. R. S.
1889, sec. 4470; *Turpin v. Turpin*, 88 Mo. 337; 9 Am.
and Eng. Encyclopedia of Law, p. 775; 1 Am. and
Eng. Encyclopedia of Law, p. 216; *Ray v. Loper*, 65
Mo. 470; *Nelson v. Wyan*, 21 Mo. 352; *Osgood v.
Brook's heirs*, 17 Mass. 356; *Hall v. Davis*, 3 Pick. 450;
*Grattan v. Grattan*, 10 Ill. 167; *Oyster v. Oyster*, 1 S.
& R. 422; 1 Am. and Eng. Encyclopedia of Law, p.
222, note 3. (4) It was error to charge the interest of
Maria T. Menke in the land sought to be partitioned,
with the rents, issues and products received by Charles
Menke, or to render judgment against Maria T. Menke

and Charles Menke personally for rents, issues and products of the land, because there is no allegation in the petition, nor any evidence whatever that either of the defendants, Charles Menke or Maria T. Menke, excluded or ousted the plaintiffs or any other person from the possession or enjoyment of the property sued for, or the rents, issues or products thereof, nor that they in any manner hindered or disturbed or interfered with the joint use or possession, by the plaintiffs, of the property. *Ragan v. McCoy*, 29 Mo. 356; *Dodd v. Barry*, 15 Mo. App. 595; Freeman on Cotenancy and Partition, secs. 275, 258; *Poco v. Columbet*, 12 Cal. 414; *Goodenow v. Ewer*, 16 Cal. 461; *Bird v. Bird*, 15 Fla. 425; *Crane v. Wagoner*, 27 Ind. 52; *Scantlin v. Allison*, 32 Kan. 376; *Nelson's Heirs v. Clay's Heirs*, 7 J. J. Marsh. (Ky.), 141; *Bridgeford v. Barbour*, 80 Ky. 329; *Israel v. Israel*, 30 Md. 120; *Sargent v. Parsons*, 12 Mass. 153; *Shepard v. Richards*, 2 Gray, 424; *Woolever v. Knapp*, 18 Barbour, 265; *Dresser v. Dresser*, 40 Barbour, 300. (5) This court has held by a long line of decisions, that it will review all material errors appearing upon the face of the record proper, although no exceptions were saved or motion for a new trial, or in arrest of judgment, was filed in the lower court. The record proper consists of the summons, pleadings, verdict, judgment and decree. *Emmons v. Gordon*, 24 S. W. Rep. 146; *Childs v. Railroad*, 23 S. W. Rep. 373; *Burns v. Patrick*, 27 Mo. 434; *Bateson v. Clark*, 37 Mo. 31; *Jones v. Fuller*, 38 Mo. 363; *Miller v. Davis*, 50 Mo. 572; *Peltz v. Eichele*, 62 Mo. 177; *State v. Griffith*, 63 Mo. 548; *McIntire v. McIntire*, 80 Mo. 471; *State v. Scott*, 104 Mo. 26; *Smith v. Burrus*, 106 Mo. 96; *Ancell v. Cape Girardeau*, 48 Mo. 80; *Sweet v. Maupin*, 65 Mo. 65; *Bagby v. Emberson*, 79 Mo. 139.

*Alexander Graves* and *Mansur & McLaughlin* for respondents.

Appellants concede in their brief and argument that by the will the church was entitled to one half the property, but contend that by the widow's renunciation the interest of the church was altered to a one fourth instead of a one half. The renunciation of the widow could not thus operate for the following reasons: *First.* The fact that this executor by the will was to sell the property after expiration of widow's life estate and divide the proceeds, renders this a will of personalty. *Hocker v. Gentry*, 3 Metc. (Ky.), 473; *Arnold v. Arnold*, 9 B. Mon. 86; *Peter v. Beverly*, 10 Pet. 235; *Gould v. Orphan Asylum*, 46 Wis. 117; *Taylor v. Benham*, 16 Curtis, 387; 3 Wheat. 563; 5 Paige, 318; *Bogert v. Hertell*, 4 Hill, 495; *Seymour v. Freer*, 8 Wall, 214; 4 Kent [12 Ed.], 203, 206; 2 Cooley's Blackstone, pp. 168–169, 172; 2 Jarman on Wills [5 Am. Ed.], p.172. "And the general rule is that the conversion directed by this will is considered as taking place at the testator's death." Jarman on Wills, p. 179, note 3. And the executor became a trustee for that purpose. *Taylor v. Benham*, 5 How. 233; *Wilson v. Wilson*, 54 Mo. 213. *Second.* If the property is to be considered either realty or personalty, appellant's proposition can not be sustained. If realty, then the church's interest is that of a vested remainder. 4 Kent [12 Ed.], 203, 206; 2 Cooley's Blackstone, pp. 168, 169. And, therefore, the act of renunciation could not affect the interests of the church. *Third.* But even if the interest of the church be considered to be a contingent remainder in real estate, still the act of renunciation is immaterial, because this will, whereby the property is conveyed, is an executory devise. 2 Cooley's Black-

stone, p. 172.  *Fourth.* "The effect of election not to take under the will is, as to the widow, to supersede the will and leave the intestate law to govern.  A conversion, therefore, which is to be made by direction of the will, does not take effect as to her." As to others taking remainders or other gifts under the will, her election to renounce the will leaves them unaffected except by accelerating estates limited after that rejected by her." 2 Jarman on Wills, p. 43; *Brink v. Layton,* 2 Redf. 79; *Barnet v. Barnet,* 1 Metc. (Ky.) 254; *Hoover v. Landis,* 76 Pa. St. 354; *Armstrong v. Park,* 9 Humph. 195; *Brown v. Hunt,* 12 Heisk. |(Tenn.) 404; *Wood v. Wood,* 1 Metc. (Ky.) 512; *Allen v. Hannun,* 15 Kan. 625.  All the parties who had any interest were before the court.  Cotenancy is indispensable to render a party either proper or necessary.  R. S. 1889, sec. 7132.  It is not necessary that an incumbrancer be made a party; his rights are not affected. *Low v. Holmes,* 17 N. J. Eq. 150; 77 Pa. St. 151; 24 Ill. 307; 15 Iowa, 361.  The partition in this case was in chancery and not under the statute, and the court could, to do complete justice, take account of the mesne rents and profits in perception by one tenant in common to the exclusion of the other.  Freeman on Cotenancy and Partition [2 Ed.], secs. 425, 512; Story's Eq. Jur., secs. 466, 655; *Obert v. Obert,* 2 Stockton, 98; *Scantlin v. Allison,* 32 Kan. 376; *Leach v. Beattie,* 33 Vt. 195; *Bowles v. Bowles,* 80 Ky. 529.

GANTT, P. J.—This is a proceeding in equity to obtain a partition of the estate of Ilett Tobbein, late of Caldwell county, Missouri, and is the culmination of the litigation to establish the last will of said Tobbein. *Catholic Church v. Tobbein,* 82 Mo. 418; *Lilly v. Tobbein,* 103 Mo. 477.

On the sixteenth day of July, 1890, the plaintiffs

filed a petition in the office of the circuit clerk of Cald-
well county, Missouri, for the partition of the estate of
Ilett Tobbein, deceased, among and between the devi-
sees of said Ilett Tobbein, in accordance with the last
will and testament of said Tobbein, which was set
forth *in hæc verba* in the petition, and stated that the
unincorporated Catholic church at Lexington was by
said will the owner in fee of one half of said real estate
and that the defendants, John Smith, Agnes Polking,
William Polking, Maria T. Menke and Charles Menke,
her husband, Upupt Mippin, Herman Bremmer, Mar-
garet Bremmer, Joseph Tobbein, Elizabeth Swartz,
John Swartz, Elizabeth Vieljans, and other nonresi-
dents, nephews and nieces of Ilett Tobbein, deceased,
and Bernard Henry Tobbein, and Mary Rabenberg
and Stephen Rabenberg claimed to have different
interests in the other half of said lands and that in
truth and in fact the title to the remaining half of said
lands was in said defendants, or some of them, but
whether it belonged to said defendants equally or not,
plaintiffs had not sufficient information to state, but
that since September 1, 1887, the defendants had been
in possession of said property, receiving the rents and
profits thereof. There was an allegation that, owing to
the number of interests, partition in kind could not be
equitably made and a sale and an ascertainment of the
various rights of all the coparceners was asked for.
Summons was duly served on defendants Mary Raben-
berg and Stephen Rabenberg and Bernard Tobbein,
and an order of publication was issued against the
other defendants.

At the October term, 1890, the defendants, John
Smith, Agnes Polking, Wm. Polking, Maria T. Menke
and Chas. Menke, her husband, and Elizabeth Smith,
who had not been sued but entered her appearance,
filed answer in which they denied the title of the

church to one half, and then averred that Catherine Tobbein, the wife of Ilett Tobbein, and named in his will, survived him, and, within one year after his death and after his will was offered for probate, filed in the office of the probate court of Caldwell county, her declaration of her election to renounce the provisions of said last will and elected to take one half of all the personal and real estate belonging to said Ilett Tobbein absolutely; that by virtue of said election she became seized of one half of said real estate; that afterward, on January 12, 1882, she made her last will and testament, devising her estate to Elizabeth Smith, Agnes and William A. Polking, and Maria T. Menke, and appointing Charles Menke her executor, and that afterward, on the fourteenth of July, 1887, said Catherine Tobbein died; that, by virtue of the last will of Catherine Tobbein, the said Maria Menke became the owner of one half of said real estate, charged with the legacies in her will mentioned, and that by reason of the election of Catherine Tobbein, the plaintiffs and the said defendants became the owners in fee of the remaining half of the real estate of Ilett Tobbein, that is, plaintiffs were entitled to one fourth and defendants to one fourth of said lands or one half each of the half remaining after said election by said Catherine, and asked for partition in the proportions stated in their answer. They then averred that the other defendants were unnecessary parties, having no interest therein, and denied possession and receipt of rents and all waste.

Plaintiffs thereupon applied for and obtained a change of venue to the circuit court of Livingston county, at the October term, 1890. The cause was continued in Livingston county until the November adjourned term.

On the ninth day of the September term, 1891, of

the circuit court of Livingston county, the following entry appears of record:

"John J. Lilly *et al,*
    *v.*
"John Smith *et al.*

"Plaintiffs, by attorney, file second amended petition herein, omitting the names of some of the parties defendants and changing the title of the cause, which said petition is in words and figures as follows, to wit:    Amended petition.

"John J. Lilly, Patrick O'Malley, Thomas Clark and Michael Holwell, trustees, who sue for themselves and the other members of the Catholic church at the city of Lexington, in the state of Missouri, an unincorporated ecclesiastical body,

Plaintiffs.

*v.*

"Maria T. Menke and Charles Menke, her husband,

Defendants.

"Plaintiffs, for their second amended petition filed herein, aver that they are now and have been for more than six years last past, elected, qualified and acting trustees of the unincorporated ecclesiastical body existing in the city of Lexington, in the state of Missouri, and commonly known as the Catholic church, at the city of Lexington, in the state of Missouri.

"Plaintiffs aver that the ecclesiastical body aforesaid has been in existence for many years—to wit, ever since the year A. D. 1840—and that its ecclesiastical name is 'Immaculate Conception.'

"Plaintiffs further aver that on the twenty-fifth day of March, 1863, one Ilett Tobbein, of said Caldwell

county, having no children, did, in the due form of law, make and publish his last will and testament, in words following, to wit:

"'I, Ilett Tobbein, of the county of Caldwell, in the state of Missouri, do hereby make, constitute, publish and declare this my last will and testament.   Should I die before my beloved wife, Katherine Tobbein, I give and bequeath to my said wife a life interest and estate in and to all my estate and property, real, personal and mixed, with power to manage, control, use and occupy the same for and during her natural life, and at the death of my said wife, I give and bequeath to the legal heirs and representatives of my said wife, one half of all my estate, and the other and remaining one half of my estate I give and bequeath to the Catholic church at the city of Lexington, in the state of Missouri; all subject, however, to the payment of all my just debts, which I desire shall first be paid by my executor here-inafter named, out of my personal estate, if the same be sufficient, and if not sufficient, then out of my personal and real estate.   And should my said wife die before me, then, upon my death, all my estate, after the payment of my just debts, shall be equally divided between the heirs and legal representatives of my said wife and said Catholic church at the city of Lexington, in the state of Missouri.

  " 'Further, I hereby make, constitute, and appoint William A. Donaldson, of said county of Caldwell, in the state of Missouri, my executor of this, my last will and testament, who shall, after the death of both myself and my said wife, sell at public sale, all of my estate, real as well as personal, upon such terms as may be ordered by the court, having probate jurisdiction within and for said county of Caldwell, and after paying all legal fees and expenses, divide the proceeds equally between the heirs of my said wife and the

said Catholic church at Lexington, according to the provisions herein aforesaid, and in all other respects administer and execute this, my last will and testament.

" 'Given under my hand and seal, this, the twenty-fifth day of March, 1863.

" 'ILETT TOBBEIN.

" 'We attest the above and foregoing will, by subscribing our names hereto as witnesses in the presence, and at the request, of Ilett Tobbein, the testator, this twenty-fifth day of March, 1863.

" 'SOLOMON MUSSER,
" 'J. C. LILLARD.'

"Plaintiffs further aver that the court of Caldwell county, having jurisdiction of the probate of wills, rejected the foregoing instrument, and refused to establish the same as the last will and testament of the said decedent.

"Plaintiffs further aver that thereafter they instituted suit, under the statute, for the purpose of procuring the judgment of the circuit court of Caldwell county, establishing said will.

"Plaintiffs further aver that after the institution of said suit, the venue thereof was, by mutual stipulalation, changed to the circuit court of Jackson county, which said court, after hearing all the evidence, including the inspection of the original will, rendered judgment for its establishment, as follows, to wit:

" 'This cause came on to be heard on the twentieth day of November, A. D., 1886, and the same being, by consent of parties, taken up and submitted to the court for final hearing and judgment, upon the issue as to whether said paper writing be the last will and testament of Ilett Tobbein, deceased, and the pleadings in the case, and the evidence offered by the plaintiffs and defendants, having been fully seen and heard by the court, together with the stipulation and agreements as

to facts by the parties, and said paper writing being produced, the court, upon said pleadings, evidence and stipulation of the parties, doth find said issue for the plaintiffs, and that said paper writing is the last will and testament of said Tobbein, deceased, and doth adjudge, decree and order that the said paper writing, a copy of which is set forth in plaintiff's petition, be, and the same is hereby established as the last will and testament of Ilett Tobbein, deceased, and the same in all courts shall be taken and considered as the last will and testament of said Ilett Tobbein; and the court doth further order and adjudge that plaintiffs recover, against the defendants, their costs in this behalf expended, and that they have execution therefor.' Thereupon an appeal was taken from the said judgment, whereby the validity of said will was established, and upon such appeal the supreme court of the state confirmed and made perpetual said decree in establishing the said will.

"Plaintiffs further aver that the said deceased Ilett Tobbein died seized and possessed of the following described real estate in said Caldwell county, to-wit:" (Here follows description of the lands in suit, nine hundred and eighty-two and one half acres in Caldwell county, Missouri.)

"Plaintiffs state that on the ———— day of————, A. D., 1879, and within one year after the last will of Ilett Tobbein was offered for probate, the said Catherine Tobbein, widow of said Ilett Tobbein, deceased, filed in the office of the probate court of said Caldwell county a declaration of her election to renounce, and wherein she did renounce, the provisions of said last will and testament of the said Ilett Tobbein, wherein she elected to take one half of all the real and personal estate belonging to the said Ilett Tobbein, absolutely, which renunciation and declaration was duly and

legally executed by the said Catherine Tobbein, and she, the said Catherine Tobbein, became the owner in fee of one half of the real estate described aforesaid. That on the twelfth day of January, A. D., 1882, she made and published her last will and testament, as follows, to wit:

" 'I, Catherine Tobbein, of Caldwell county, Missouri, do make, publish and declare this to be my last will and testament.

" '*First*—I give and bequeath to my niece, Elizabeth Smith, wife of John Smith, of Campbell county, Kentucky, the sum of $3,000.

" '*Second*—I give and bequeath to my sister, Agnes Polking, now residing in Germany, the sum of $500.

" '*Third*—I give and bequeath to my brother, William A. Polking, now residing in Germany, the sum of $1,000.

" '*Fourth*—I give and bequeath to my niece, Maria T. Menke, wife of Charles Menke, of Cincinnati, Ohio, all the remainder of my estate, both real and personal, absolutely, after payment of the legacies aforesaid.

" '*Fifth*—I hereby nominate, constitute and appoint my nephew, Charles Menke, executor of this, my last will and testament; and I hereby direct that my said executor shall not be required to give bond or security for the performance of his duties as such executor.'

"That afterward, to wit, on the twenty-first day of March, 1887, she added the following codicil to her last will and testament, viz.:

" 'This is a codicil to my last will and testament, bearing date the twenty-first day of March, 1887. Clause second of my previous will, where I give and bequeath to Agnes Polking $500, I modify as follows: I give and bequeath to Charles Menke the said sum of $500, mentioned in said second clause of my will, to be loaned

by him on good security, and the interest thereon he is hereby authorized to pay to said Agnes Polking, annually, during her natural life, and at her death he is hereby authorized and directed to pay said sum of $500 to my brother, William Polking, now residing in Germany. The bequest herein made by this codicil is not to interfere in any way with the fourth provision of my foregoing will. I further desire that the expense of administering my estate shall be paid by the legatees named in my will, in proportion to their respective interests.'

·'Plaintiffs allege that the said Catherine Tobbein departed this life on the fourteenth day of July, 1887, that afterward, to wit, on the first day of September, 1887, the said last will of said Catherine Tobbein was duly and legally probated in the probate court of the said county of Caldwell; on the twenty-sixth day of September, 1887, the defendant, Charles Menke, was duly appointed and qualified as executor of the said last will and testament of the said Catherine Tobbein by the said probate court of Caldwell county, state of Missouri, and now is the legal and acting executor of said will, and as such has charge of her said estate. Defendants allege that, by virtue of the renunciation by Catherine Tobbein of the said last will and testament of the said Ilett Tobbein, and her election to take one half of the real estate mentioned of Ilett Tobbein, and by virtue of the provisions of the said last will and testament of the said Catherine Tobbein, Maria T. Menke, the wife of the defendant, Charles Menke, became and is now the owner of, and is entitled to, the possession of the one half of said realty mentioned in plaintiffs' petition, charged with the legacies in said last will mentioned.

"Plaintiffs state that afterwards the following proceedings were had in the matter of the adjudication of

the claims of divers parties to the personal property belonging to the estate of said Ilett Tobbein, deceased, wherein the probate court of Caldwell county, Missouri (said court having jurisdiction thereof), rendered the following decision and judgment, to wit:

" 'In the probate court of Caldwell county, Missouri, August 18, 1891.

" 'In matters pertaining to the estate of Ilett Tobbein, deceased.

" 'Now, at this day comes John W. Brown, administrator of the estate aforesaid of deceased, with his attorney, and J. J. Lilly *et al.*, trustees of the Catholic church of Lexington, Mo., by their attorney, and Charles Menke, executor of the estate of Catherine Tobbein, deceased, with his attorney; and the court having heard the argument of counsel in regard to who were the beneficiaries under the will of said Ilett Tobbein, deceased, and entitled to the funds found to be due said estate in the hands of said Brown (as administrator of the estate of said Ilett Tobbein) on his final settlement with said estate, find that Catherine Tobbein, deceased, rejected said will and elected to be endowed, under the laws of the state of Missouri, with one half of all the real and personal property left by said deceased. There being no children alive at the death of the deceased, and the said Catherine Tobbein, widow, as aforesaid, being dead at this date, and said Menke being her executor, the court finds that the parties entitled to distribution under the will of said Tobbein are Charles Menke, as executor of said Catherine Tobbein, widow of said Ilett Tobbein, and the Catholic church, of Lexington, Mo. The amount found due the estate, in hands of administrator, on final settlement, being $3,824.74, and as the widow of said deceased and her representatives have received at various times from said administrator out of the funds in his hands the

sum of $6,648.19, this is ordered to be placed in hotch-pot, and interest computed on the same at the same rate of interest as has been charged administrator on final settlement, and order of distribution continued until to-morrow, as to the amount due each of said parties.'

"And in said court in said cause the court met pursuant to the distribution of the estate of Ilett Tobbein, deceased.

" 'Now, on this day the court having computed the interest on the sums paid Catherine Tobbein, widow of aforesaid Ilett Tobbein, deceased, and her representatives, at the same rates of interest as was charged administrator on final settlement, places the same in the general fund as follows:

| | | |
|---|---|---|
| By amount paid widow and her representatives | | $ 6,648.19 |
| Interest accrued on the amount paid | | 3,631.09 |
| | | $10,279.28 |
| By amount paid Catholic church since date of final settlement.. | | 4,000.00 |
| By amount found due from administrator on final settlement | $3,824.74 | |
| After deducting. . | 67.50 | 3,767.24 |
| Amount costs | | 67.50 |
| | | $18,114.02 |
| The share of said executor and of said church | | $ 9,057.01 |
| Which distribution is as follows: | | |
| To amount paid widow and her representatives | | 9,057.01 |
| To amount paid Catholic church at Lexington | | $ 4,000.00 |
| The amount due Catholic church after deducting | 67.50 | |
| costs from amount in hands of administrator | | 3,767.24 |
| Due to the church to equalize amount | | 1,289.77 |
| | | $ 9,057.01' |

"Plaintiffs aver that by reason of the aforesaid, the Catholic church at Lexington, an unincorporated

ecclesiastical association, is and has become the owner in fee of one half of all the above described real estate, and that the said Maria T. Menke has become and is the owner in fee of the other undivided one half of the above described real estate—the said Maria T. Menke, wife of the said Charles Menke, and the said Catholic church at the city of Lexington, Missouri, now being joint tenants and equal owners of all of the above described real estate.

"Plaintiffs aver that the said defendants, ever since the first day of September, 1887, have been in possession of the said real property, and have received the rents and profits thereof, which plaintiffs aver are of the value of $2,000 per annum.

"The plaintiffs further aver that the said defendants, Charles Menke and Maria T. Menke, have committed waste upon said premises, and have cut down and converted to their use valuable timber from said premises, which was and is reasonably worth the sum of $3,000 which said waste and destruction and conversion of said timber the plaintiffs charge and aver was committed by defendant Charles Menke, under the direction and by the consent of defendant Maria T. Menke, his wife.

"Plaintiffs further aver that upon the nineteenth day of August, 1891, the probate court of Caldwell county, by its proper order entered of record, found that the defendants, Maria T. Menke and her husband Charles Menke, had received the sum of $1,289.77 over and beyond the amount to which they were entitled, and plaintiffs now ask that this amount be brought into hotchpot upon the final division and settlement in partition of this estate.

"Wherefore, by virtue of all the foregoing premises, plaintiffs aver that the said church in the city of

Lexington, Missouri, an unincorporated association, has been damaged in the aggregate to the extent of $9,789.77, which sum they ask may be adjudged a lien against, and upon, the undivided one half of said realty belonging to the defendants.

"Plaintiffs aver that the multiplicity of interests in said real estate is such that no partition in kind can equitably be made without great prejudice to the owners; wherefore, plaintiffs pray that the court, by proper decree, determine and adjudge that said lands be sold, and the proceeds of such sale be divided between the parties entitled thereto, according to their respective rights as ascertained and determined by this court; and the plaintiffs further pray for a decree requiring the defendants to account for the said $3,000 of waste committed, and that the same be adjudged against, and deducted from, their interest in said real estate; and plaintiffs ask and further pray for a decree requiring the defendants to account for $5,000 of rent, as the one half due to the plaintiffs since the defendants entered upon and took possession of the aforesaid real estate, in the year A. D., 1887, and that the same be adjudged against, and deducted from, the interest of the defendants in the aforesaid real estate.

"And the plaintiffs further pray for a decree requiring the defendants to pay the sum of $1,289.77 adjudged by the probate court of Caldwell county to have been over received by defendants from the personal property of the estate of Ilett Tobbein, deceased, and that the same be made a lien upon the one half interest of defendants in and to the above described real estate; and for all other property and general relief against the defendants to which plaintiffs in equity and good conscience are entitled, and as to the court may seem meet and proper."

Afterward on the fifteenth day of the September term, 1891, it appearing that Judge BROADDUS was incompetent to try the cause by reason of having been counsel for defendants, an election of special judge was held and Alexander Mullins, Esq., was duly elected and qualified, and thereupon, Mr. Charles A. Loomis, who had been associated with Judge BROADDUS in defense of the cause, by leave of the court, withdrew his appearance as counsel for the defendants. And thereupon, an interlocutory decree was rendered finding all the facts as averred by plaintiffs and adjudging that they had received of the personal estate and in rents and for timber sold $2,580.89 over and above their share of said estate and decreed the plaintiffs a lien for the said sum on the half of said real estate derived under the will of Catherine Tobbein, and refused them a decree for their fourth under the will of Ilett Tobbein and appointed commissioners to make partition and assign said Maria one half of said lands and an order of sale of the balance after her share had been set apart to her with an order to report the sale to the court for confirmation, and ordered the commissioners to report at the January term, 1892.

On the thirteenth of November, at the September term, 1891, motions for new trial and in arrest were filed by Chas. Menke and Maria, his wife, and were overruled. These motions were not preserved by bill of exceptions and are not in the record.

After the interlocutory judgment, the following entry appears of record:

"John J. Lilly *et al.*,⎫
          *v.*               ⎬
"Chas. Menke *et al.*  ⎭

"At this day come the plaintiffs in this cause by their attorney and file motion to amend the record in

this cause as made in book 22, page 609, in words and figures following:

"John J. Lilly *et al.*, Plaintiffs, ⎫
                    *v.*                    ⎬
"John Smith *et al.*, Defendants. ⎭

"Come now plaintiffs after judgment entered herein and move the court to amend the record of this cause by striking therefrom the names of all defendants except those of the defendants Charles Menke and Maria T. Menke, and assign as reason in support of said motion that the other defendants whose names appear in the original petition are not necessary parties to the determination of the issues involved herein and that their names were for that reason omitted from the amended petition upon which this cause was tried and judgment rendered." Which motion was sustained and the record amended as prayed. On the same day an appeal was prayed and granted.

Afterwards on January 26, 1892, the report of the commissioners was filed and approved. In their report the commissioners assigned certain lands to Mrs. Menke and thereupon the court adjudged that all title of the plaintiffs therein be divested and the same be vested in her, subject to a lien in favor of plaintiffs for $2,580.89 and one half of the costs of this proceeding, and it was decreed she should pay the same in six months or execution issue therefor against said lands, and the remaining half was ordered sold and the cause continued for further orders and judgments of the court.

On February 5, 1892, an appeal was prayed and granted to defendants Maria T. Menke and Charles Menke, her husband.

I. Upon the face of the record proper, it appears that Ilett Tobbein, having no children or other descend-

ants, by his last will, duly probated and confirmed by the judgment of this court, devised all his estate to his wife, Catherine Tobbein, for her life, remainder of one half to the Catholic church at Lexington; remainder of the other half to the heirs and legal representatives of Catherine Tobbein; and that Catherine Tobbein within one year renounced the provisions of said will in her behalf and elected to take, as and for her dower, one half of said estate absolutely, subject to debts. R. S. 1879, sec. 2190.

The right of Ilett Tobbein to devise and bequeath his estate was qualified by the right of his wife to make her election. The two statutes, the one of wills and the other on dower, being in *pari materia*, must be construed together. When Mrs. Tobbein made her election one half of the estate became hers absolutely, unaffected by the provisions of the will. When her election was made and filed as required by law, the will of her husband was operative only upon the remaining one half of the estate he had owned.

Her election, however, manifestly could not affect the operation of the will as to the other legatees and devisees named therein. It is plain that it was the intention of Ilett Tobbein that his other devisees and legatees should take his estate upon the death of his wife, and upon the termination of her right thereto, and it was and is the duty of the courts to effectuate that intention as far as it can be done and they will not permit it to be frustrated by the election of his widow, which he could not prevent. 1 Redfield on Wills [3 Ed.], *429, notes XXI, XXIII; *Logan v. Logan,* 17 Pac. Rep. 99; *Allen v. Hannum,* 15 Kan. 625; *Carder v. Commissioners,* 16 Ohio St. 353; *In re Rawlings' Estate,* 47 N. W. Rep. (Iowa) 992; *In re Cunningham's Estate,* 20 Atl. Rep. 714. Accordingly, there remained an undivided half of his estate, after her election, for

partition between the Catholic church and "the heirs and legal representatives of Catherine Tobbein," of which, the church was entitled to one half, and Catherine Tobbein's "heirs and legal representatives" to a half, or one fourth, each, of the estate of which Ilett Tobbein died seized and possessed. But the circuit court decreed that the Catholic church should take all of said estate that remained after the widow's election. In this the court clearly committed error.

By section 7142, Revised Statutes, 1889, "no partition or sale of lands, tenements or hereditaments, devised by any last will, shall be made under the provisions of this article" (chapter on partition) "*contrary to the intention of the testator*, expressed in any such will." As was well said by Judge NAPTON in *Ex Parte Cubbage v. Franklin*, 62 Mo. 368, "Our partition law is very broad, but it at least provides that a partition can not be made in contravention of a will. Indeed, if the contrary was held, there would be no use in our statutes allowing a testator to make a will." In the face of this positive and wise enactment, the court refused to find and adjudge the heirs and legal representatives of Catherine Tobbein the half of Ilett Tobbein's estate which he had devised them, although the will was set forth in full on the face of the petition of the plaintiffs, and after it had permitted plaintiffs to amend their petition and dismiss as to all of said heirs and representatives except Maria T. Menke and Charles Menke.

But it is said that this court can not, on this appeal, consider the errors apparent in this proceeding for partition because the motions in arrest and for new trial are not in the record, preserved by a bill of exceptions, and because the petition states a cause of action.

Prior to the adoption of the present code of civil procedure in 1849, it had been held by this court in

*McGee v. State*, 8 Mo. 495, that whatever might be taken advantage of by a motion in arrest of judgment could be corrected on writ of error. After the adoption of the code this provision remained therein: "No exception shall be taken, in an appeal or writ of error, to any proceedings in the circuit court, except such as shall have been expressly decided by such court." R. S. 1855, sec. 33, p. 1300. And the same provision remained in all the revisions up to and including the last. 2 Wagner's Statutes, p. 1067, sec. 32; R. S. 1879, sec. 3774; R. S. 1889, p. 590, sec. 2302. But, as was pointed out by this court in *Bateson v. Clark*, 37 Mo. 31, the Revised Statutes of 1855, page 1301, contained this other provision, in the same chapter and known as section 35: "The supreme court, in appeals or writs of error, shall *examine the record* and award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given, as to them shall seem agreeable to law." And this latter provision has also remained in all the revisions down to and including the present. 2 Wagner's Statutes, p. 1068, sec. 34; R. S. 1879, sec. 3776; R. S. 1889, sec. 2304.

In *Bateson v. Clark*, 37 Mo. 31, this court held itself bound to look into the petition to see if it stated a cause of action although it had not been challenged by a demurrer or motion in arrest in the circuit court. WAGNER, J., said: "The record proper, by law, is the petition, summons, and all subsequent pleadings, including the verdict and judgment, and these the law has made it our duty to examine and revise, and if any error is apparent on the face of these pleadings which constitute the record, we will reverse the cause, whether any exceptions were taken or not."

Prior to this decision this court, in *Fox v. Tooke,*

34 Mo. 509, reversed the cause because a married woman appeared and answered only by attorney in a suit against her to charge her separate estate. It was objected that the point had not been made in the circuit court but the court said: "As it appeared upon the record that she was a married woman, we think that it was the duty of the conrt below to see that she appeared by a proper person * * * . For the manifest error, the judgment must be reversed and the cause remanded." Citing *Claflin v. Van Wagoner*, 32 Mo. 252.

In *State to use v. Matson*, 38 Mo. 489, *Bateson v. Clark, supra*, was discussed and the decision therein expressly adhered to, and a petition which failed to state a cause of action was held reversible error, although not challenged by demurrer or motion in arrest. *Jones v. Tuller*, 38 Mo. 365, is to the same effect.

In *Nordmanser v. Hitchcock*, 40 Mo. 178, the error apparent on the record was in allowing defendant to recover on his counterclaim when plaintiff had failed to appear instead of dismissing plaintiff's suit.

In *Sweet v. Maupin*, 65 Mo. 72, all the cases are reviewed and the principle reaffirmed that this court may reverse for error apparent on the record although not raised in the lower court; but this important qualification was added, that even though the error was patent of record, this court would not reverse unless the error materially affected the merits of the action, and this is the statute now as then. Section 2303, R. S. 1889.

This principle has more recently been reiterated by different members of this court until it would seem it ought now to be recognized as the settled practice. *McIntire v. McIntire*, 80 Mo. 470; *State ex rel. v. Scott,*

104 Mo. *loc. cit.* 31; *Smith v. Burrus*, 106 Mo. 94; *Railroad v. Lewright*, 113 Mo. 660.

That the error in this case, which erroneously took from the heirs of Catherine Tobbein one fourth of nine hundred, eighty-two and one half acres of land in one of the most fertile counties of Missouri and vested it in plaintiffs, was a most material one, we take it, will not be denied; and when it is further considered that all the devisees and legatees named in the last will of Catherine Tobbein had filed an answer to the first petition for partition asserting their title to this one fourth, and that four out of six of them were nonresidents of this state, two residing in Germany, and two in Campbell county, Kentucky; and that an amended petition was filed in Livingston county on the tenth of November, and that, on the twelfth of November, Judge BROADDUS, defendants' counsel, had, by reason of his election to the bench, been rendered incompetent to practice in the court of which he was judge, and that Mr. Loomis, his late partner, had on that day withdrawn from the cause, and left defendants without counsel, and that an amended petition was filed dismissing the cause as to the nonresident defendants, although it was a partition case and their interest in a fourth of the lands was patent on the face of the two wills set forth in the petition, the error becomes even more glaring.

Even were this an ordinary statutory partition it was the clear and unmistakable duty of the plaintiffs to make every person having any interest in such premises, whether in possession or otherwise, a party to the petition (R. S. 1889, sec. 7135), and having failed to do so it was the duty of the court to require plaintiffs to bring in any such party, at any stage of the proceedings, when this fact appeared. But this being a partition in equity, the rule in chancery is, that where there are parties whose interests in the subject-

matter of the suit and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties is an absolute necessity, without which the court can not proceed, the court will refuse to entertain the bill until such parties are brought in, and, if they can not be, will refuse to entertain the suit at all.   In *Dameron v. Ameson*, 71 Mo. 97, this court held that where it appeared from the facts in evidence, in a suit for partition, that a person who was not a party to the record had an interest in the land, no partition could be decreed unless she was made a party, and for that cause reversed the judgment.

But a still stronger parallel to this case is found in *Estes v. Nell*, 108 Mo. 172.   On the trial in that case the plaintiffs read in evidence the will of Henry Nell, deceased.   By this will forty acres of land was given to defendant Della.   The executor was directed to sell the balance and divide between his heirs.   Upon the reading of the will, a demurrer to the evidence was interposed and sustained, from which plaintiff appealed.   Said MACFARLANE, J., for division number two, of this court:  "It is thus disclosed, from the allegations of the petition, that Thomas Harris as one of the heirs of Manning Harris, deceased, owns an undivided one sixth of the land to be affected, and is not made a party to the suit.   The will read in evidence also shows that one of the heirs of  Henry Nell is not a party to the suit.   These facts appearing  *  *  *  should a judgment of partition have been rendered?"   And it was held the court properly refused partition.   Citing Freeman on Cotenancy and Partition, sec. 463; *Barney v. Baltimore City*, 6 Wall. 284; *Shields v. Barrow*, 17 How. 130; *Dameron v. Jameson*, 71 Mo. 97; *Dillon's Adm'r v. Bates*, 39 Mo. 292.

Here the plaintiffs seek  to partition lands under the two wills of Ilett Tobbein and Catherine Tobbein.

Their petition discloses the names of these devisees, Maria and Charles Menke, Elizabeth Smith, Agnes Polking and William A. Polking as the legal representatives of Catherine Tobbein, to whom Ilett Tobbein devised one half of his estate at the death of his wife; but if they are not the legal heirs and representatives of said Catherine it was incumbent on plaintiffs to show the court who were said heirs and their respective interests therein, especially as the partition was sought under the wills of Ilett and Catherine Tobbein.

Section 7134 of the partition act requires that: "The petition shall particularly describe the premises sought to be divided or sold, and shall set forth the names, rights and title of all parties interested therein, so far as the same can be stated, including persons entitled to the reversion, remainder or inheritance, and of every person who, upon any contingency, may be or become entitled to any beneficial interest in the premises." And by sections 7144 and 7145, the court is required, even in cases of default to require plaintiffs to exhibit proofs of their title and so find and declare the rights, titles and interests of both plaintiffs and defendants "and determine such rights, and give judgment that partition be made between such of them as shall have any right therein accordingly."

But it is objected that as the defect was apparent on the face of the petition, and no objection was interposed by demurrer or answer or by a motion in arrest duly preserved, it can not be noticed. While it is true that in some cases in the general practice it has been said such defects in the petition were waived when appearing on its face, this rule has not been followed in proceedings in partition. *Hiles v. Rule*, 121 Mo. 248. The reasons are many and obvious why one seeking a compulsory partition should be required to bring into court all who have an interest in the prop-

erty sought to be divided.   The language of Judge
MILLER in *Barney v. Baltimore City*, 6 Wall. 285, is
most appropriate here: ''If a decree is made, which is
intended to bind them [the absent parties], it is mani-
festly unjust to do this when they are not parties to
the suit, and have no opportunity to be heard.   But as
the decree can not bind them, the court can not for
that very reason afford the relief asked, to the other
parties.   If, for instance, the decree should partition
the land and state an account, the particular pieces of
land allotted to the parties before the court would
still be undivided as to *these* parties, whose interest in
each piece would remain as before the partition.   And
they could at any time apply to the proper court, and
ask a repartition of the whole tract, unaffected by the
decree in this case.''

Applying that language to this decree, it is appar-
ent that ''the heirs at law and legal representatives of
Mrs. Catherine Tobbein,'' who were not made parties
to this suit, are not estopped to claim their share in one
fourth of the estate of Ilett Tobbein.   Not being
before the court of course they could neither demur or
move in arrest, but it may be said that Maria and
Charles Menke were in court and can not complain,
but we think otherwise.   This decree left their share
still bound up with the absent devisees.   They had the
right to have their share assigned to them in such a
manner that no reasonable objections can be urged to
their title in it.   They had a right to be secured against
a new partition whenever and as often as any of the
omitted heirs or devisees shall see fit to ask for it, and to
be relieved against the costs of repeated suits and attor-
ney's fees.   Under section 7182 the court may allow a
reasonable attorney's fee to the attorney bringing the
suit and reasonable allowances to guardians *ad litem*.
This fee is allowed on the theory that each cotenant's

interest will be protected in the judgment and he is liable for his proportionate share of the costs, and he has the right to complain, if after submitting to this taxation, he must submit to still other similar suits with other parties. We hold that a petition for partition, that thus discloses the interests of persons not made parties to the suit, does not state a good cause of action in partition, either under the statute or in equity, and that a decree rendered without bringing in such parties is erroneous on its face, and will be reversed in this court on appeal or writ of error, although no motion in arrest or exception was made in the trial court and preserved in the bill of exceptions.

II. As the judgment must be reversed, it may as well be said that the petition should allege that the plaintiffs, as trustees of the unincorporated church, "sue for themselves and all other members of said church." Story's Equity Pleadings [9 Ed.], secs. 94 and 114a; *Lilly v. Tobbein*, 103 Mo. 477.

III. The allegation that Maria T. Menke and Charles Menke have, since September 1, 1887, been in possession of the real property and have received the rents and profits thereof, to the amount of $2,000, without any allegation that plaintiffs were denied the joint occupancy of said premises, is not sufficient to support a claim for rents against Charles and Maria Menke. *Ragan v. McCoy*, 29 Mo. 356; Freeman on Cotenancy and Partition [2 Ed.], secs. 258 and 275.

IV. It appears from the petition that Charles Menke, as executor of the last will and testament of Catherine Tobbein, is in possession of the land. If so, he should be sued individually or in his representative character, for any waste committed by him, and Mrs. Menke can not be charged with his waste merely because she is his wife. In such a case plaintiff's rem-

edy would be a personal action against him for damages, and it would have no connection with a partition of this estate.

V. There was no error in permitting plaintiffs to file an amended petition, other than in so doing they were allowed to dismiss the action as to the heirs of Catherine Tobbein, who were and are essentially necessary parties to a complete partition. As to the assignment that no final settlement of the estate of Ilett Tobbein had been made, it is sufficient to say this allegation appears both in the petition and the decree.

VI. The remaining assignment is that the circuit court erred in charging the share of Maria T. Menke with the advancements or payments made by John W. Brown, administrator *pendente lite*, of Ilett Tobbein, to "Catherine Tobbein and her representatives," in the absence of any averment or proof that Maria Menke had ever received any part of such advances.

After his settlement it appears that the probate court of Caldwell county heard arguments as to who were the parties entitled to the distribution of the personalty in the hands of said administrator. The record recites that, in this proceeding, Brown, the administrator, appeared, and the trustees of the church and Charles Menke, as executor of Catherine Tobbein. There is no recital of any notice to Mrs. Menke or the other devisees and legatees, and there was no appearance by them. From the finding, it appeared that, since his final settlement, the administrator had paid the trustees $4,000; that he had in hands $3,767.24, and that he had paid to Catherine Tobbein and her representatives $6,648.19. Thereupon the court proceeded to compute interest on the amount so paid said Catherine Tobbein, and found that it amounted to $3,631.09, and charged her estate with $10,279.28, and ordered it all brought into hotchpot and divided it in two equal shares

amounting to $9,057.02, and thus found the widow's estate had received $1,289.77 more than her share, and thus the amount stood in the probate court in November, 1891; and in this decree the circuit court charged that balance against Mrs. Menke, and decreed that she should account for $1,000 rent, and $291.11 for waste, amounting in the aggregate to $2,580.89, and decreed that said sum should be a lien upon all her interests in said lands, and should be paid by her in six months, and in default, her share of said lands was directed to be sold by the sheriff of Caldwell county, and the proceeds paid over to plaintiff. There was no averment that this money received by Catherine Tobbein was ever received by either Charles or Maria Menke. Neither Maria Menke nor any of the other heirs at law and legal representatives of Catherine Tobbein were parties to this alleged order of distribution.

Our statute has most wisely provided a course of procedure to relieve administrators and executors of the risk they incurred at common law by distributing the personal estate before all debts were paid, and has, with great particularity, prescribed for the distribution of estates. Art. 11, chap. 1, R. S. 1889, secs. 237 to 260, inclusive. By section 242 it is directed that, "Each person entitled to distribution or partition, *not applying therefor, shall be notified in writing*, of such application ten days before any such order shall be made; or, if such person do not reside in this state, a notice of such application shall be published in some newspaper in this state, eight weeks before any such order shall be made." And by the next section, 243, "the order of distribution made by the court upon such notice shall settle the claims of the distributees." *Straat v. O'Neil*, 84 Mo. 68; *Wickham v. Page*, 49 Mo. 526; *Coquard v. Marshall*, 14 Mo. App.

80; *In re Elliott's Estate v. Wilson*, 27 Mo. App. 218; *State ex rel. v. Board of Equalization*, 108 Mo. 235.

In the absence of notice to these distributees, the judgment of the probate court would be clearly *coram non judice* as to them, and could not be the basis of a recovery against them in this action. It is obvious that their rights were entirely ignored in the order of the probate court. The probate court proceeded as if the administrator *pendente lite* were the executor or regular administrator. He was appointed under secti on 14, Revised Statutes, 1879, section 13, Revised Statutes, 1889, which provides that letters should be issued to him during the contest of the will, and that he should take charge and administer the estate according to law under the direction of the court and *account for and pay over all money and property to the executor or regular administrator, when qualified to act;* but, instead of so doing, it would seem he assumed to make a final settlement with certain of the distributees. This was irregular, unless he was also appointed administrator with the will annexed. It was held in *RoBards v. Lamb*, 89 Mo. 303, that, where the administrator *pendente lite* made his final settlement after the will was established and the executors had qualified, and upon that settlement was ordered to turn over all the assets to the executors, which he did, and took their receipts, this was a final judgment binding upon all parties, and there was no need of the notice as in a final settlement at the end of the administration when there was a regular representative with whom the settlement was made. But in this case the executor was dead, and, unless an administrator *de bonis non* with the will annexed was appointed, there was no such representative of the estate as the law recognizes to bind these distributees, and it would be most unconscionable to bind them by a proceeding so irregular, of which they had no notice. 1 Woerner's

American Law of Administration, sec. 181; *Dillon's Adm'r v. Bates,* 39 Mo. 292–300; *Lamb v. Helm,* 56 Mo. 420.

The claim, therefore, that these distributees are bound by the judgment or settlement in the probate court by the administrator *pendente lite* can not be sustained, unless he was also administrator with the will annexed and notice of distribution given as required by statute, nor were they bound by the acts of the executor of Catherine Tobbein in the matter of their distributive shares.

It results that, for these errors apparent on the record, the judgment is reversed and the cause remanded, with directions that the heirs at law and legal representatives shall be made defendants, and opportunity given defendants to plead after the bill is so amended. BLACK, C. J., BRACE, BURGESS, MACFARLANE and SHERWOOD, JJ., concur; BARCLAY, J., dissents.

BARCLAY, J. (*dissenting*).—This is an action for the partition of land. Defendants answered. Plaintiffs afterwards amended their petition, but defendants did not file any other answer thereto.

When the case was duly reached for trial, plaintiffs took default and introduced their evidence, upon which the court found the interests of the respective parties in the land, and passed an interlocutory decree defining those interests. The court also appointed three commissioners to make partition.

During the trial, both defendants appeared; and, at their suggestion, were sworn and testified on their own behalf.

The defendants filed a motion for new trial, and a motion in arrest of judgment; both of which the court overruled. They appealed to the supreme court,

November 11, 1891, and took time for a bill of exceptions, but no such bill was ever filed.

At a later term, the report of the commissioners in partition was made.   Upon confirmation thereof, the court entered a final decree ascertaining the interests of the parties in certain parcels of the land mentioned, directing a sale of the residue, etc.

No exceptions were taken to the commissioners' report.

The defendants, at the same term, took another appeal to the supreme court.   That is the one now under consideration.

No motion of any kind, looking to a review of the proceedings in the trial court, was filed at the term of the final decree.

Several questions have been raised in this court upon the record proper.

The case is the culmination of a litigation, reported, in its earlier stages, 82 Mo. 418, and 103 Mo. 477.

Defendants claim that the facts stated in plaintiff's petition do not support the finding which the court entered, and on which the judgment rests.

It is not contended that the petition fails to state a cause of action.

The contention is that, on the facts in plaintiff's amended petition, plaintiffs were only entitled to one fourth of the estate sought to be partitioned, instead of to one half, as the court found and adjudged.

Plaintiffs resist defendants' effort to obtain a review of such a question, thus sought to be raised in this court.

It seems to me that the spirit of our code of procedure requires parties to bring before the trial court such a question as that now presented.

1.   Under the constitution of Missouri, the jurisdiction of the supreme court, in a case like this, is appellate by nature.   Const. 1875, art. 6, sec. 2.

What is meant by appellate jurisdiction?

For answer, let us note what was written on that point by Chancellor KENT, with the concurrence of the whole court of errors in New York, many years before the adoption of the reformed code of procedure:

"A party acts against good conscience if he will not come forward and disclose his reasons, when called upon by the proper tribunal, but reserves himself for another court, and for the cold, hard purpose of accumulating costs, or of depriving his adversary of the opportunity of correcting his error."    *Gelston v. Hoyt,* (1816), 13 John. * p. 576.

He further declared in that case that "the very theory and constitution of a court of appellate jurisdiction only, is the correction of errors which a court below may have committed; and a court below can not be said to have committed an error when their judgment was never called into exercise, and the point of law was never taken into consideration, but was abandoned, by the acquiescence or default of the party who raised it.    To assume the discussion and consideration of a matter of law, which the party would not discuss in the supreme court, and which that court, therefore, did not consider, is to assume, in effect, original jurisdiction.    It is impossible to calculate all the mischiefs to which such a course of proceeding would lead." (*P. 577).

These views are approved in *Flake v. Van Wagenen* (1873), 54 N. Y. 27.

The statutes of Missouri do not indicate any purpose to depart from the general principles of law, which the above quotation expresses.

On the contrary, it is declared by section 2303, that this court "shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and

materially affecting the merits of the action." R. S. 1889, sec. 2303.

Our law provides for a motion in arrest of judgment in the trial court. R. S. 1889, sec. 2243. It further declares that, "when a judgment shall be arrested, the court shall allow the proceedings in which the error was to be amended, in all cases, when the same amendment might have been made before trial, and the cause shall again proceed according to the practice of the court" (R. S. 1889, sec. 2244); but "in such case the party in whose proceeding the first error was, shall pay all costs incurred thereby." R. S. 1889, sec. 2245.

By the motion in arrest, a litigant may take advantage of any material error in the record proper; and the adverse party is then only put to costs in the trial court to correct it. But if one party might, in the supreme court, start, for the first time, a question of law, arising on the record, and have his objection sustained, on some phase of the case never presented to the circuit court, the practical effect of that ruling would be to cast upon the adverse party the costs of the appeal, when he might have conceded the point, had it been suggested in the trial court. He could have corrected it there without the great expense of coming to a court of review.

How can it be said, in view of section 2303 above quoted, that the trial court committed error upon a point which was never submitted for a ruling?

In New York, whence we obtained our code of practice, it is the settled construction of the law that no such questions as are now submitted, can be first raised on appeal. *Delaney v. Brett* (1872), 51 N. Y. 78; *Knapp v. Simon* (1884), 96 N. Y. 284; *Cunningham v. Fitzgerald* (1893), 138 N. Y. 165.

The same rule prevails in other jurisdictions. *Robertson v. Robinson* (1880), 65 Ala. 610; *Linden v. Green* (1890), 81 Iowa, 365; *Shell v. Boyd* (1890), 32 S. C. 359; *Needham v. King* (1893), 95 Mich. 303; *Perez v. Barber* (1893), New Mex. 34 Pac. Rep. 190.

The idea of allowing a close scrutiny of the record proper, upon writ of error, is supposed to be sanctioned by the principles of the common law. It is not necessary to examine into that at present. See *State ex rel. v. Scott* (1891), 104 Mo. 32. But it may be remarked, in passing, that the rule applied in this case by my learned associates appears to receive no approval in Pennsylvania or Illinois, whose existing systems of pleading are, in the main, derived from the common law. *Eckert v. Schoch* (1893), 155 Pa. St. 531; *McLaughlin v. Hinds* (1894), 151 Ill. 407, 38 N. E. Rep. 136.

In the case in hand, however, the petition states a good cause of action. No one denies that. The defect pointed out is simply this: that the interest of the plaintiffs in the land was found to be greater than the facts alleged warranted, according to defendant's theory. Yet that point was never suggested in the circuit court, so far as we can see, at any time.

A motion in arrest was filed there. Let us suppose that it assigned the single ground that the petition did not state a cause of action? If that was its purport, the court was entirely right in overruling it. Were other points, that might have been made in that motion waived by the omission to make them; or were they, nevertheless, kept safe for future use in some other court?

There should be but one answer to these queries, namely, that if defendants ever intended to object to the amount of the finding which the trial court made,

they should have objected to it in some form in that court.

It has been very generally held in recent years in Missouri that all objections to proceedings at the tria are waived, if not presented for correction by motion for new trial.

The same principle should be applied where the alleged error consists in making a wrong deduction, by way of finding, as to the amount of land which plaintiffs are adjudged to own, when the adverse party affected thereby has neither objected to that action, nor asked the trial court to correct it while it had the power.

2. The Missouri decisions are not harmonious on this subject. In many cases it has been observed, in a general way, and in others distinctly held, that the record proper may be reviewed for errors, on appeal. My learned brother GANTT has mentioned some of them, beginning with a criminal case, in the 8th Missouri.

In criminal prosecutions that rule is established now by statute. R. S. 1889, sec. 4297. In those cases, too, the trial court may arrest the judgment without motion, on its own view of any substantial error in the record. R. S. 1889, sec. 4272.

But as to civil actions, many precedents in this state appear to require that such questions as are presented on this appeal should first be ruled upon by the trial court before becoming proper matters for review elsewhere. There is, it is true, conflict in the Missouri decisions; but the proposition, just stated, has abundant support in our judgments; and it furnishes a rule more in harmony with the true theory of appellate jurisdiction, as well as more just to litigants and to the trial judges, than is the opposite doctrine.

As early as *Davis v. Scripps* (1830), 2 Mo. 187, it was said that: "If the court erred as a jury, the mode

of redress is to ask for a new trial, and, if that is improperly refused, the wrong may be redressed by this court. But, if the error is an error in point of law, then the party should expressly bring his point before this court in a shape clearly showing that the point of law was decided on by the court.''

The same principle was announced again, with emphasis in *Alexander v. Hayden* (1830), 2 Mo. 211; and repeated in *Watson v. Walsh* (1847), 10 Mo. 454.

In *Warner v. Morin* (1850), 13 Mo. 455, the court expressed similar views to those of Chancellor KENT, above quoted, touching the nature of appellate jurisdiction, and held it to be then settled law that the supreme court was not authorized to consider anything as a ground for reviewing a judgment which had not been brought properly to the notice of the court below, ''either in the motion for a new trial, if the alleged errors have relation to proceedings during the trial, or in arrest of judgment if going to the pleadings.''

See remarks as to reasons ''on the record,'' in *Floersh v. Bank* (1847), 10 Mo. 517; *Newton v. Miller* (1872), 49 Mo. 298; *Hotel Co. v. Sigement* (1873), 53 Mo. 176.

The case of *Warner v. Morin*, above cited, was questioned in *State to use v. Matson* (1866), 38 Mo. 489; but the same learned judge, who wrote the latter judgment, modified his opinion afterwards, as shown by *Banks v. Lades* (1867), 39 Mo. 406; and by *Morgner v. Kister* (1868), 42 Mo. 466, as well as by his concurrence with Judge WAGNER in the decision in *Long v. Towl* (1867), 41 Mo. 398, wherein we find the following observations on this point:

''The law provides that, before a case can be taken to an appellate court, a motion for a new trial, or in arrest of judgment, must be filed within four days, if the term so long continue, and, if not, then before the

end of the term.   Gen. Stat., ch. 172, sec. 6.   This is intended to give the inferior court an opportunity to correct its own error, and, unless such motion is filed at the appropriate time, the cause will not be reviewed in the appellate tribunal."   (p. 399).

In *Case v. Fogg* (1870), 46 Mo. 47, Judge BLISS, for the whole court, said:   "Those errors only can be considered that are raised upon the record proper by the motion in arrest, if one be filed."

He had foreshadowed that ruling in *State to use v. King* (1869), 44 Mo. 243.

In several cases it has been stated that there is nothing to review in the absence of a motion for a new trial or in arrest, or to set aside the judgment as the particular case may require.   *Woods v. Mosier* (1856), 22 Mo. 335;   *Lawther v. Agee* (1864), 34 Mo. 372;   *Banks v. Lades* (1867), 39 Mo. 406;   *Morgner v. Kister* (1868), 42 Mo. App. 466;   *Moran v. January* (1873), 52 Mo. 523.

In the case last named, the appeal was dismissed, and in *Davis v. Colt* (1862), 31 Mo. 530, the judgment was affirmed, on motion; thus indicating that, in the absence of a proper objection in the trial court, there was nothing left to review.

The last cited decision is also instructive, as showing that the court then understood the word "exceptions" in the popular sense of objections (in which it is sometimes colloquially used, *Elsner v. Supreme Lodge* (1889), 98 Mo. 640), as it appears in the statute declaring that "no exceptions shall be taken, in an appeal or writ of error, to any proceedings in the circuit court, except such as shall have been expressly decided by such court."   R. S. 1889, sec. 2302.

Exceptions, in the technical sense, are not usually taken in a court of last resort, but in the trial court, to preserve points for subsequent correction by another court

of revisory power.    In the broader meaning of that term, however, as synonymous with "objections," exceptions are often taken in the supreme court.    In this wider sense, the word "exceptions" should be understood and read in section 2302; for it then conforms to the true spirit of the reformed code of procedure, which, in my opinion, never intended to permit a party to unfold such unpleasant surprises upon his adversary, for the first time, in the supreme court whether they relate to the record proper or to the proceeding at the trial, assuming that the court had power to render the judgment pronounced.

See, also, on this point, *Taylor v. Russell* (1844), 8 Mo. 702; *Taylor v. Holman* (1870), 45 Mo. 371.

It has been said in several decisions that the objection that the petition does not state a cause of action may be raised for the first time on appeal.

Those rulings secure to citizens of Missouri the full enjoyment, in the supreme court, of the beauties of the general demurrer, brilliantly described by Judge BLECKLEY (*Ellison v. Railroad* (1891), 87 Ga. 705).

On that subject my views were given in *State ex rel. v. Scott* (1891), 104 Mo. 32; and it is unnecessary to repeat what was then written.

But the case at bar goes much further than that proposition.

We are here expected to review the record when the petition is conceded to state a good cause for a partition of the property.    The gist of the objection now urged is that the finding awards plaintiffs too large an interest in the land, though not more than they claim in the prayer of their petition.

The real objection to the result on the circuit is, therefore, in substance, nothing more than that the finding is excessive on the facts shown by the record.

In several recent judgments in this court, it has

been directly ruled that excess in the finding upon an issue of fact can not properly be reviewed on appeal unless assigned as a ground of the motion for a new trial. *Orr v. Rode* (1890), 101 Mo. 387; *Ridenour v. Railroad* (1890), 102 Mo. 270; *Weese v. Brown* (1890), 102 Mo. 299; *Schmitz v. Railroad* (1893), 119 Mo. 256.

The justice of this rule is obvious, for this reason (without mentioning others): If the excess is objected to by motion, the prevailing party may cure the fault by remitting the excess at once, without incurring the costs of a review. So such an objection in the trial court, has heretofore been insisted upon.

Considering the reason of the rule, there is no difference in principle between an excessive finding, reached on the facts, and one reached on the pleadings.

Where the alleged excess in the court's finding, as to the amount of plaintiff's recovery, depends on a question of law, that question should, in some way, be presented to the court of first instance, that the latter may have the opportunity to consider it, before any appellate court is invoked to do so. *Flannagan v. Heath* (1891), 31 Neb. 776; *Keator Lumber Co. v. Thompson* (1892), 144 U. S. 438; *Borden v. Tel. Co.* (1893), 32 Fla. 394; *Taylor v. Trustees* (1893), 7 Indiana App. 388; (34 N. E. Rep. 655); *Bank v. Smith*, (1894 Minn.) 59 N. W. Rep. 311.

In *Donaldson v. Thompson* (1894), 120 Mo. 152, (25 S. W. Rep. 358), the second division of the court held that where a judgment was rendered on an agreed statement of facts, and the correctness of the court's conclusion of law was not questioned by any motion or exception, there was nothing to review in the supreme court.

In the case at bar, defendants did not preserve their motions for new trial or in arrest, or any exception to the rulings on them. We do not know on

what grounds they were founded. The motions may have been directed at matters wholly foreign to the discustion that has been had in this court. We are bound to assume (until the contrary appears) that the court rightly acted in denying them.

It is true our code declares that this court shall "examine the record," etc., as stated in section 2304, which my brother GANTT has quoted; but that section must be read along with the two which precede it, and which, with due respect, do not appear to me to sanction a review of the point on which my colleagues have acted in reversing the judgment now in view.

On the contrary, a great number of cases in this state hold that many errors on the record proper are not reviewable unless presented first to the trial court by motion in arrest. A list of precedents to that effect appears in *Sweet v. Maupin* (1877), 65 Mo. 65, a decision which recognized that proposition and enforced it.

But from those precedents, and the result reached in the case at bar, the only rule deducible is that, for some errors on the record proper, this court will reverse, without regard to whether or not such an issue was presented to the trial court; whereas, in other cases of error of record, it will not reverse. The only question on that point will be whether the court considers the particular error a great or a small one. The latter must be called to the notice of the trial court; the former need not be, to be available in the appellate court.

To such a conclusion, my concurrence is not given.

In my opinion, the code should be so construed as to permit no judgment to be reversed here, merely on the ground that plaintiffs have recovered in the circuit court a larger share of the land in suit than is considered by this court their due under the pleadings, where that point is not shown to have been ever made in the case before.

To allow such a point to be successful, when raised here for the first time, seems to me to transform this court into one of original jurisdiction in this class of cases, which was not intended by our constitution and laws.

For these reasons, and without going into other phases of the case, my respectful dissent is entered to the judgment announced by the court in banc.