Hewey *v.* Nourse.

---

BENJAMIN M. HEWEY *versus* BENJAMIN F. NOURSE.

Section 16 of c. 26 of R. S., is not in abrogation of the common law, but a substantial affirmance of it.

When a portion only of the instructions to a jury is reported in the exceptions, it will be presumed that the presiding Judge gave all other proper instructions.

Thus, in a case under R. S., c. 26, § 16, for damages caused by the spreading of a fire, kindled by the defendant upon his own land, an instruction that,

if the defendant was in any fault in setting or guarding the fire, at any time before it was blown by the violent wind upon the plaintiff's land, and, in consequence of such fault, the wind carried the fire there, then the defendant would be liable, although, after it was so blown, it was beyond human control until the plaintiff's property was destroyed, is unexceptionable on the part of the defendant, it being predicated upon the presumption that the presiding Judge gave the proper instructions as to the "fault" mentioned.

A person, kindling a fire upon his own land, for purposes of husbandry, is responsible for damages occurring in consequence of a want of ordinary care in guarding it.

When a witness, by reason of a mistake, has testified incorrectly, in behalf of the prevailing party, the Court, in its discretion, may grant a new trial.

But it must clearly appear that the mistake was in regard to a material point; and the circumstances should be such as to render it probable that the mistake affected the verdict.

To sustain a motion to set aside a verdict for such cause, it is not sufficient that the witness testifies that he is convinced of his mistake, it should also be made to appear to the Court, that there is reasonable ground to believe the witness was actually mistaken.

On Exceptions from *Nisi Prius*, Dickerson, J., presiding.

Case, for damages caused by a fire, kindled upon the defendant's land, for the purposes of husbandry, which spread upon the plaintiff's woodland. The fire was kindled on the morning of 21st June, and the piece all burned over that day; none of the fire got off of said piece until ten o'clock, A. M., of the 23d June, when a violent wind arose and carried some of the smoldering fire from the burnt piece, sixteen rods, to the plaintiff's woodland, where, by reason of the wind, it spread and burned so rapidly that it was beyond human control, until after the plaintiff's property was burned.

The defendant contended that, if the wind blew the fire sixteen rods, to the plaintiff's land, and thereby got beyond human control until after the injury to the plaintiff's property, and the jury should find that the fire was kindled at a suitable time and in a prudent manner, then the defendant would not be liable. The instructions upon this point,

as well as the other facts in the case, will be found in the opinion.

*N. Abbott,* for the defendant, contended that;—

1. The action is founded on R. S., c. 26, § 16, which only requires that the fire shall be kindled "at a suitable time and in a careful and prudent manner." No "guarding" is required as by the common law. Plaintiff having elected the statute remedy must stand by it. He cannot require the defendant to do any more than the statute requires, and the latter makes him liable only "by his failure to comply with this provision." Instructions that the defendant was liable, if in "any fault in setting the fire or guarding and taking care of it for three days after it was kindled, were erroneous." Only ordinary care in guarding a fire is required by the common law. Hence the instruction that, if the defendant was in "any fault", &c., was too favorable to the plaintiff, and was calculatad to mislead the jury.

2. King was a material witness; his testimony was against the interest of the defendant; he has since discovered that he testified incorrectly, by mistake; and a new trial should be granted. *Warren* v. *Hope,* 6 Greenl., 479.

*N. H. Hubbard,* for the plaintiff.

DICKERSON, J.—This is an action of the case, charging the defendant with kindling a fire upon his own land, for a lawful purpose, "at an unsuitable time and in a careless, and imprudent manner," and that the fire, for want of proper care on his part, "spread, and caused great damage to the plaintiff's woodland, down timber, wood and bark." No reference is made in the writ to the statute upon the subject; and the declaration appears to be drawn according to the usual formula where the remedy is sought at common law. As the statute does not abrogate the common law, but is rather a substantial affirmance of it, we need only consider the principles of the common law applicable in such cases.

There was testimony in the case tending to show that

there was a piece of crippled land, or land covered with down wood and brush, adjoining that on which the fire was kindled, and that, after the fire caught on that land, it became unmanageable and was not subject to human control, in consequence of the violence of the wind, until after it had reached the plaintiff's land, and done the damage complained of. The counsel for the defendant contended that the defendant would not be liable for the damage thus done, if the fire was kindled at a suitable time, and in a prudent manner; but the Court instructed the jury that, if the defendant was in any fault in setting the fire or in guarding and taking care of it at any time before it blew on to the crippled land, in consequence of which fault the wind blew the fire on to the same, he would be liable, although, after the wind so blew the fire, it became unmanageable, until after the plaintiff's property was injured. The verdict was for the plaintiff, and the defendant excepted.

Every person has a right to kindle a fire on his own land for the purposes of husbandry, if he does it at a proper time, and in a suitable manner, and uses reasonable care and diligence to prevent its spreading and doing injury to the property of others. The time may be suitable and the manner prudent, and yet, if he is guilty of negligence in taking care of it, and it spreads and injures the property of another in consequence of such negligence, he is liable in damages for the injury done. The gist of the action is negligence, and if that exists in either of these particulars, and injury is done in consequence thereof, the liability attaches; and it is immaterial whether the proof establishes gross negligence, or only a want of ordinary care on the part of the defendant. *Batchelder* v. *Keagan*, 18 Maine, 38; *Barnard* v. *Poor*, 21 Pick., 380; *Tourtellot* v. *Rosebrook*, 11 Met., 462.

Where only a portion of the instructions to the jury is reported, it will be presumed that the presiding Judge gave all other proper instructions. *Sidensparker* v. *Sidensparker*, 52 Maine, 481.

The "fault," mentioned in the reported instructions, is to be understood as that degree of negligence which amounts to a want of ordinary care. The instructions predicate the defendant's liability upon his neglect to use the ordinary means to prevent the fire spreading upon the crippled land indicated by the evidence. The jury were told, in effect, that if the defendant's fault was not the sole cause of the wind blowing the fire upon the crippled land, he was not liable. The "fault," to be found by the jury, in order to warrant a verdict for the plaintiff, was not a trifling or insignificant one, but a culpable neglect "in consequence of which the wind blew the fire" into the dangerous quarter, a direction quite as favorable to the defendant as he wás entitled to. Whether the fault or negligence consisted in the time or manner of kindling the fire, or the means used to prevent its spreading was immaterial, as either would be sufficient to render the defendant liable if the plaintiff had suffered injury thereby. We can discover no error in refusing to give the requested instructions, or in the instructions given.

The motion to set aside the verdict as against the weight of evidence is not sustained. There was testimony on both sides, and the jury have found that it preponderated in favor of the plaintiff. The fitness of the time, appropriateness of the manner, and the requirements of ordinary care in respect to the subject matter in controversy, are familiar topics to those usually called to act as jurors. To justify the Court in setting the verdict aside, for the cause alleged in the motion, there must be such a manifest weight of evidence against the verdict, as to render it clear that the jury either misapprehended the evidence, or were guilty of gross misconduct. We see nothing in this case to warrant such a conclusion.

The defendant has filed a motion for a new trial, on the ground that John King, a witness called by the plaintiff, was mistaken in his testimony, and his deposition has been taken to sustain the motion. Where a witness, who testifi-

ed for the prevailing party, discovers that he testified incorrectly by reason of mistake, the Court, in its discretion, may grant a new trial at the instance of the other party. *Richardson* v. *Fisher*, 1 Bingham, 145; *Warren* v. *Hope*, 2 Greenl., 479.

But it must clearly appear that the witness has fallen into a mistake in giving his testimony upon a material point in the case; and the circumstances of the case should be such as to render it probable that the mistake of the witness had the effect of turning the verdict of the jury. *Coddington* v. *Hunt*, 6 Hill, 596.

To show due care in watching the fire, the defendant introduced one Edward Kennedy, one of his employes, who testified that he "was on the burnt piece, watching the fire all the forenoon, on Thursday," the day when the damage was done. John King, called by the plaintiff, testified that, at "eleven o'clock, on that day, he saw three Irishmen hoeing, and talked with them; that one of them was Edward Kennedy; that, a few minutes afterwards, he saw Kennedy at the pump, near by, looking toward the smoke in the vicinity of the burnt piece; that the wind blew Kennedy's hat off while he was standing near the pump; witness knew it was Kennedy and could identify him." The materiality of the testimony is apparent, and is not denied by the plaintiff's counsel.

In his deposition, taken in support of the motion, King says he is convinced that he was mistaken as to the identity of Kennedy, and that he became convinced solely from the statements of the two Currens and one Guttey, all Irishmen and employes of the defendant, neither of whom was a witness at the trial. It appears from King's deposition that, at the instance of one Baker, agent of the defendant, he called on the Currens with Baker. They tell King that, on the occasion testified to by him, they were at work building wall in the Nourse place, near where the fire was set, and that Edward Kennedy went down with them in the morning, and remained there during the forenoon watching

the fire. Shehan, another Irishman and agent of the defendant, takes King to Guttey, to convince him that *he* was the man that King took for Kennedy. King does not recognize him as the man, but Guttey *says* he is, and King believes him, though Guttey has no recollection of seeing King on that day, or having his hat blown off by the wind, or of standing by the pump, facts testified to by King as having taken place on the occasion of his interview with Kennedy. How a man of ordinary intelligence should be convinced of mistake under such circumstances, and upon such statements is, perhaps, not easy to be understood; though it is not difficult to see how new trials would be multiplied, if they could be obtained through such agencies; litigation would be attended with interminable delays, and that wholesome maxim of the law, *interest reipublicae ut sit finis litium*, would become a dead letter.

In order to authorize the Court to set aside a verdict on account of a mistake in the testimony of a witness, called by the prevailing party, it is not sufficient that the witness testifies that *he* is convinced that he was mistaken in his testimony; it should also appear to the Court, from the facts and circumstances of the case, that there is reasonable ground to believe that the witness was actually mistaken. Otherwise there would be great danger that the fears or credulity of witnesses would be unduly excited by unscrupulous litigants, and the ends of justice perverted. After a careful examination of the facts in this case, we are by no means satisfied that the witness King was mistaken in his original testimony, and the motion must be overruled.

*Exceptions and motion overruled.*

APPLETON, C. J., CUTTING, KENT, BARROWS and TAPLEY, JJ., concurred.