95 303
102 71

GEORGE H. NEEDHAM v. GEORGE B. KING, ADMINIS-
TRATOR, ETC.

*Negligence—Setting fires—Evidence.*

1. The burning of a fallow, and of brush, logs, and rubbish, on the surface of one's own land, is a lawful act, unless the fire is set at an improper time, or is carelessly managed.[1]

2. Due care in the use of fire is defined to be "a degree of care corresponding to the danger, and requires circumspection, not only as to time and place of starting it, but in protecting against its spread afterwards;" citing Cooley, Torts, 590.

3. If a fire is conducted to, or maintained at, or negligently suffered to reach, a point where a reasonably prudent man would not have started it, it is unlawfully there, and the fact that the wind contributes to an injury does not relieve the party from liability; citing *Selleck v. Railway Co.*, 93 Mich. 375.

4. Under a declaration charging the defendant with setting a fire at an improper time, and with not caring for and controlling it and preventing its spread, and with not extinguishing it in due season, it is competent for the plaintiff to show the state of the weather during the time the fire existed prior to the injury, to enable the jury to determine the degree of care the defendant should have exercised.

Error to Jackson. (Peck, J.) Argued March 9, 1893. Decided April 14, 1893.

---

[1] See *Richter v. Harper*, *ante*, 221, and cases cited in note.

Case.   Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*Thomas A. Wilson,* for appellant.

*Parkinson & Day* and *T. E. Barkworth,* for plaintiff.

MCGRATH, J.   Plaintiff sued defendant's intestate, one Peckham, for damages by reason of a fire which Peckham had ignited on his own premises, and which had communicated with plaintiff's premises.   The following sketch will illustrate the situation of the lands of the respective parties:

Plaintiff's north 80, and about two-thirds of Peckham's north 80, had been marshy land. The ditching left a peaty topsoil. That portion of plaintiff's 80 immediately north of the county ditch had been partially subdued, and produced a kind of blue grass. Peckham's land south of the county ditch, and extending south of the dry ditch to the higher land, had not been subdued, nor does it appear that the grass had been cut upon the marshy portion. Immediately south of the dry ditch there were a few acres of higher ground, which had been chopped three years before, and upon which there was an accumulation of old logs, brush, and dry grass and thistles. Immediately south of this fallow, wheat had been cut that season, and Peckham was preparing to put in another crop of wheat upon the same parcel. On July 30, Peckham set fire to the wheat stubble at about the point A. The fire spread from the stubble into the fallow, and still further northward. The weather continued very dry, and on the 19th of October following a high wind carried the fire northward upon and over plaintiff's entire 80. It appears that Peckham encouraged the fire from time to time through this entire period, relighting it wherever it had failed to clean up the ground to his satisfaction. His design, as he expressed it, was to burn off the peaty surface, and subdue the land in that way. His neighbors had called his attention to the danger of the fire spreading and running over the marshy land, but he persisted. Plaintiff recovered, and defendant appeals.

The burning of a fallow, and of brush, logs, and rubbish, on the surface of one's own land, is of frequent necessity in husbandry, and is a lawful act, unless the fire is set at an improper time, or is carelessly managed. As is said in 2 Shear. & R. Neg. § 669:

"The owner of land has a right to burn the fallow and

95 MICH.—20.

wood thereon for the purpose of bringing the land into cultivation, and is not liable for injuries caused to his neighbors thereby, without proof of some other act or default, or some other circumstance making the act itself negligent. He must, however, use ordinary care to avoid spreading the fire upon the land of others."

The purpose may be lawful, the time opportune, and the manner prudent; yet if, in consequence of negligence in the care of the fire, it spreads, and injures the property of another, the liability attaches. The gist of the action for the injury is negligence, and it is sufficient if a want of ordinary care is established. *Hewey v. Nourse*, 54 Me. 256; *Bachelder v. Heagan*, 18 Id. 32; *Higgins v. Dewey*, 107 Mass. 494; *Barnard v. Poor*, 21 Pick. 378; *Tourtellot v. Rosebrook*, 11 Metc. 460; *Dewey v. Leonard*, 14 Minn. 153; *Catron v. Nichols*, 81 Mo. 80; *Garrett v. Freeman*, 5 Jones (N. C.), 78; *Hanlon v. Ingram*, 3 Iowa, 81; *Jacobs v. Andrews*, 4 Id. 506; *Furlong v. Carroll*, 7 Ont. App. 145; *Turberville v. Stamp*, 12 Mod. 152; *Gillson v. Railway Co.*, 33 U. C. Q. B. 128; 35 Id. 475. These cases impose the duty, not only of care in the setting of fires, and, in localities where contagion is probable, of proper precautions, but of diligence in management, in guarding against spreading, and in the protection of neighboring property. They generally relate to fires not unlawfully or carelessly kindled. Fire is a dangerous element, and in making use of it a degree of care is required corresponding to the danger. Due care regarding its use is defined by Mr. Cooley as "a degree of care corresponding to the danger, and requires circumspection, not only as to time and place of starting it, but in protecting against its spread afterwards." Cooley, Torts, 590.

The defendant, however, insists that the act of setting fire to the stubble was a lawful act, and that he could not be made liable by an unlooked-for contingency, such as

drought or high winds. An examination of the authorities will not be unprofitable:

In *Stuart v. Hawley*, 22 Barb. 619, there had been considerable rain in the latter part of June; but from that time to July 17, when defendant set fire to some log-heaps in his fallow, it had continued dry. The place had been burned over the May previous, and there was no brush near. It was low swamp land. The log-heaps were not very dry when first fired, and did not immediately burn. It rained a little on the morning of the 17th, but on the 20th the wind blew violently, and the fire communicated to the pasture lot lying between plaintiff's and defendant's lands. On the 26th day of July the wind blew a gale, and the fire was blown across the pasture lot upon plaintiff's premises. The only evidence of any carelessness was that the fire was set in a dry time in July. The court held that this single fact did not entitle plaintiff to recover, and say:

" The fire was set on low swamp ground that had once been burned over. There was no brush near. The stumps were wet, and did not burn well, and, in fact, were not all consumed. It is a well-known fact that fire will not so readily run on ground which has been before burned over, as at first. It was set on a day which looked likely for rain. It did rain in the morning, though not to a great extent."

In *Calkins v. Barger*, 44 Barb. 424,—

" Defendant in the early part of May set fire to some log-heaps on his premises, which were old and damp, and were from five to ten rods from the defendant's house, and about one-third of a mile from the plaintiff's barn. The land where the fire was set was damp, and near a swamp, and had been burned the year previous. The defendant's hired man left him the same day of the fire, which was two days after it was kindled; and the defendant himself went away from home, the same morning, a distance of about two miles, and returned again about 2 o'clock in the afternoon. There was no wind, and it was

a little hazy, when the defendant left. About 10 o'clock in the forenoon the wind arose, and it blew a gale. The fire, which had been burning up to this time, appears to have followed the decayed material of an old fence a portion of the way, and then must have blown over some distance to the plaintiff's barn, which took fire, and, with its contents, was consumed."

In both of these cases, the setting of the fire was a lawful act. The fires were not maintained as running fires, but were kindled for a specific purpose. In neither case were the surroundings suggestive of more than ordinary danger. The fire in both cases was forced beyond the vicinity of the log-heaps, and over a surface that in the ordinary course would not lead it.

In *Averitt v. Murrell,* 4 Jones (N. C.), 322,—

"The defendant had fenced in a portion of his own woodland, and was engaged in clearing it about the time of the alleged wrong. To this end he had had the timber cut down, and piled up for burning. The nearest of these log-heaps was 25 or 30 yards from the woodland of the defendant, and several hundred yards from that of the plaintiff. On the day charged in the warrant the defendant ordered his slaves to set fire to these log-heaps, and to burn them up. They raked the trash away from the log-piles carefully, and in the morning, while the weather was calm, did set fire to the logs. Afterwards the wind blew with great violence, and carried sparks to the neighboring woodland, whereby the woods took fire, and the flames reached the plaintiff's woodland, and burnt his cultivated turpentine trees, and did him considerable damage."

Due precaution had been taken; the fire was ignited in the morning; it was being carefully guarded; and the wind arose within a few hours. In the subsequent case of *Garrett v. Freeman,* 5 Jones (N. C.), 78, where a fire was set in a log-heap in very dry weather, within five rods of a fence, a dead pine tree and rubbish lay between the log-heap and fence, by which fire was communicated to timber and a house upon adjoining land. When the fire was set, it was calm, but the wind afterwards arose. The same

court held that it was negligence to fire the pile in that situation, when there was reason to expect at least an ordinary wind.

In *Miller v. Martin*, 16 Mo. 508, Martin owned a farm about one-half mile north of Miller's, and between them was an open prairie. Defendant (Miller) had started to plow a field, but, in consequence of the stubble and rubbish upon the ground, he was obliged to desist. In order to remove the obstructions which impeded the plowing, he set fire to the stubble, having first plowed about a rod in width around it. Himself and servant boy remained to watch the fire. The morning was calm, but at noon a high wind arose, and in the temporary absence of the boy, who went to get a drink of water, the fire escaped. The court held that the injury arose from an unavoidable accident, without any blame or fault on defendant's part. This was a mere stubble fire. Precaution was taken before setting it, and ordinary care exercised afterwards.

In *Fahn v. Reichart*, 8 Wis. 255, it was held that defendant was not liable for setting fire to a log-pile on his own land, from which the wind blew sparks to his neighbor's stacks, unless he was negligent in putting the fire at that place at that time.

In *Case v. Hobart*, 25 Wis. 654, the evidence showed that defendant's fire must have been communicated to plaintiff's land, if at all, by combustible matter burning unobserved underneath the surface, and there was no proof that defendant knew of the combustible nature of the soil.

In *Clark v. Foot*, 8 Johns. 421, held, that it is lawful for a person to burn his fallow, and, if his neighbor is injured thereby, he will have a remedy, if there be sufficient ground to impute negligence or misconduct to defendant. "Here there is no evidence of negligence, and the jury have passed on the case."

In *Turberville v. Stamp*, 12 Mod. 152, it is said:

"Every man must so use his own as not to injure another. The law is general. The fire which a man makes in the fields is as much his fire as his fire in his house. It is made on his ground, with his materials, and by his order, and he must, at his peril, take care that it does not, through his neglect, injure his neighbor. If he kindles it at a proper time and place, and the violence of the wind carries it into his neighbor's ground, and prejudices him, this is fit to be given in evidence. But now, here, it is found to have been by his negligence, and it is the same as if it had been in his house."

The court regarded the fact to be one for the jury.

In *Dean v. McCarty*, 2 U. C. Q. B. 448, defendant had set fire to his log-heaps at a favorable time, but a high wind sprung up, and the fire spread. The court held that the question was for the jury.

In *Hewey v. Nourse*, 54 Me. 256, the fire was kindled on the morning of June 21, and burned all over the parcel that day. About 10 A. M. of the 23d a violent wind arose, and carried some of the smoldering fire from the burned piece to plaintiff's woodland. The trial court instructed the jury that if defendant was in fault in not taking care of the fire before it blew upon the plaintiff's land, in consequence of which fault the wind blew the fire upon plaintiff's land, defendant would be liable; and the court sustained the verdict.

In *Krippner v. Biebl*, 28 Minn. 139,—

"Defendant set a fire in his grain stubble on the 3d of October, after plowing around the field to prevent the spreading of the fire. The fire jumped the plowing, and spread over the prairie. The defendant attempted to extinguish it the same day; the evidence tending to show that the fire was not actually extinguished, but that it continued to burn, smolderingly, in the soil of a slough until the 5th of the same month, when, without other intervening cause than an ordinary change in the direction and force of the wind, it burned afresh, and, running upon plaintiff's land, two miles from where the fire had been set, destroyed his property. *Held* that, if the defend-

ant was chargeable with negligence in the setting and care of the fire, the fact that it was so long stayed in its progress in the slough, burning there in a latent condition, did not, as a matter of law, excuse defendant from liability for the subsequent injury caused by the fire, although he might not have had reason to anticipate that the fire would so smolder in the slough, and so revive; nor can it be said, as a matter of law, that such injury was too remote to warrant a recovery against the defendant."

The case of *McGibbon v. Baxter,* 51 Hun, 587, is meager in its facts. It seems to ignore the obligations imposed by all the authorities, of care in the management of fires, and diligence in protecting adjoining property. The continuance of the drought would seem to suggest increased vigilance. The law, certainly, will not justify one party in assuming that it will rain; and another, that it will not blow.

As has been said, the gist of the action is negligence, and what constitutes negligence must depend upon the facts and circumstances of the particular case. There is no doubt that a party, having taken reasonable precautions to avoid the spread of fire, may, on a calm morning in a dry time, set fire to rubbish upon his premises, and if, during the necessary progress of the fire, a violent wind causes the fire to escape to his neighbor's premises, he cannot be said to have been negligent. But the law does not justify the use of fire at a time and place when the probable consequences are communication with the property of others. The jury were not, in the present case, confined to a consideration of the original kindling of the fire in the wheat stubble. Peckham's acts amounted to a series of kindlings, continuing down to a short time before the fire. There was no effort made to confine the fires to the stubble or to the fallow. The fire was actively maintained upon the border of, if not led into, this hitherto marshy land, consisting of a large acreage covered with combustible

matter. It was for the jury to say whether that was reasonable prudence; whether the fire had not, before the morning of October 19, reached a point beyond which it should not have been allowed to pass; whether a reasonably prudent man would not have been warned by the continued drought, and would not have anticipated winds at that season of the year. Certainly, it cannot be said, as a matter of law, that a man may tempt the winds, and then charge the consequences to Providence. If the fire was conducted to, or maintained at, or negligently suffered to reach, a point where a reasonably prudent man would not have started a fire, then it was unlawfully there, and the fact that the wind contributed to the injury does not relieve defendant from liability. *Selleck v. Railway Co.*, 93 Mich. 375; *Salisbury v. Herchenroder*, 106 Mass. 458.

An exception was taken to the remarks of plaintiff's counsel in his opening to the jury, respecting an offer to settle, but counsel at once disclaimed any admission or promise on the part of Peckham.

Plaintiff sold certain cattle which had been injured by the fire, after being advised so to do by Peckham. He was permitted to testify what he realized from them. In any event, the amount realized had already been sworn to by the same witness, without objection, and its repetition could not prejudice defendant.

Testimony as to the state of the weather during the time the fires existed prior to the injury was competent to enable the jury to determine the degree of care that should have been exercised by Peckham. It would certainly have been proper for defendant to show that there had been frequent rains.

It does not follow that testimony as to the damage to the land per acre includes the damage to fences and other improvements; and it was not error to admit testimony as

to the value of the fences destroyed after witnesses had testified generally as to the damage per acre to the land, especially as the witnesses who testified to the fence damage had excluded the fences in their estimate of the injury done to the land.

It is insisted that the declaration is defective in that it does not allege that the plaintiff was without negligence. The point does not seem to have been raised below, and will not be considered here.

The declaration alleges that—

"The defendant, on or about the 30th day of July, 1889, negligently and carelessly did set, or cause to be set, a fire on the lands of said defendant, lying south and adjacent to plaintiff's said land, and carelessly and negligently permitted said fire to burn for a long space of time, and to run and extend into the low, peaty land of defendant's close, to and adjoining said land of said plaintiff," and "that by and through the negligence, carelessness, and unskillfulness and default of said defendant and his servants in setting such fire at an improper and unseasonable time, and in not caring for such fire, and in not controlling and preventing the spreading of the same, and not extinguishing the same in due season, said fire spread."

It is insisted that it was incumbent upon plaintiff to establish by proof each element of negligence alleged, but the court instructed the jury that, if they found Peckham to have been negligent in either of the particulars mentioned, plaintiff might recover. It is a sufficient answer, if any answer is necessary, that counsel for defendant submitted requests upon that theory, which were given. At defendant's suggestion the court instructed the jury that they must find that "the defendant was guilty of negligence in setting, or caring for, the fire, after it was set."

We find no error in the record, and the judgment is affirmed.

The other Justices concurred.