### WESTERN UNION TELEGRAPH CO. v. THOMPSON.

(Circuit Court of Appeals, Fifth Circuit. March 6, 1906. Rehearing Denied April 3, 1906.)

#### No. 1,457.

1. FALSE IMPRISONMENT—DISTINGUISHED FROM MALICIOUS PROSECUTION—EFFECT OF AMENDMENT OF COMPLAINT.

An amendment of a count of a complaint for malicious prosecution by striking out an allegation that plaintiff was arrested on a warrant, and substituting an allegation that she was arrested and held without a warrant, changed the cause of action stated, under the law of Alabama, from one in case for malicious prosecution to one in trespass for false imprisonment, and rendered the charge of the court based on the theory that the count was for malicious prosecution misleading and erroneous.

2. FALSE IMPRISONMENT—ISSUES AND PROOF.

Under the law of Alabama where malice and want of probable cause are alleged in the complaint, in an action for false imprisonment, they must be proved to warrant a recovery.

3. SAME—ACTION AGAINST CORPORATION—UNAUTHORIZED ACT OF SERVANT.

Under the law of Alabama an action in trespass for false imprisonment cannot be maintained against a corporation based on the negligent and unauthorized act of a mere servant working under the immediate orders of a superior.

4. WRIT OF ERROR—GROUNDS OF REVERSAL—ESTOPPEL.

A party should not be permitted to obtain a reversal of a judgment by taking one position in the trial court as to the cause of action stated in a count of the complaint, which was acquiesced in by the court, and another and antagonistic position in the appellate court. Per Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

This suit was originally instituted by the defendant in error, in the city court of Birmingham, to recover damages of the plaintiff in error, and was subsequently removed to the circuit court. The complaint, filed by the plaintiff, contained the three following counts:

"First Count. The plaintiff claims of the defendant $5,000 damages for maliciously, and without probable cause therefor, causing the plaintiff to be arrested and imprisoned on a charge of obtaining money under false pretenses for a long time, to wit, one day, on the 29th day of October, 1901. Plaintiff avers that she was incarcerated in the city jail of Birmingham, Ala., which jail was filthy, full of bad odors, and vermin, and that she suffered great mental and physical distress and pain therefrom, and was made sick, sore, and disordered, all to her damage the amount aforesaid.

"Second Count. The plaintiff claims of the defendant $5,000 damages for maliciously, and without probable cause therefor, causing the plaintiff to be arrested under a warrant issued by C. W. Austin, chief of police, of Birmingham, Ala., on the 29th day of October, 1901, on a charge of obtaining money under false pretenses, which charges, before the commencement of this action, had been judicially investigated and said prosecution ended, and the plaintiff discharged. And plaintiff avers that she sustained the

injuries and suffered the damages set out more particularly in the first count of the complaint.

"Third Count. Plaintiff claims of the defendant $5,000 damages for wrongfully imprisoning plaintiff, or causing plaintiff to be imprisoned, in the city jail of Birmingham, Ala., or restrained against her will, on the 29th day of October, 1901. And plaintiff avers that she sustained the injuries, and suffered the damages set out more particularly in the first count of the complaint."

Prior to the trial the plaintiff below amended the second count by striking out the words, "Under a warrant issued by C. W. Austin, chief of police of Birmingham, Ala.," and inserting in lieu thereof the following: "Without a warrant by a policeman of the city of Birmingham for the violation of an ordinance of said city." The answer of the defendant below consisted (1) of a plea of not guilty; (2) a general denial; and (3) a plea of justification of the arrest by an officer. At the conclusion of the testimony the defendant requested a general affirmative charge in its favor, and the following instructions which were by the court refused: "(1) The court charges the jury that, if they believe the evidence, they cannot find for the plaintiff under the first count of the complaint. (2) The court charges the jury that, if they believe the evidence, they cannot find for the plaintiff under the second count of the complaint. (3) The court charges the jury, if they believe the evidence, they cannot find for the plaintiff under the third count of the complaint. (4) If the jury believe from the evidence that E. E. Williams was the manager of and represented the defendant telegraph company in the conduct of its business at Birmingham, and further believe from the evidence that said Williams did not request, or direct, the officer who arrested the plaintiff to arrest her, and that her arrest by the officer was made upon a charge preferred by another employé of the defendant, and at the request of the said other employé, then the plaintiff cannot recover under the first and third counts of the complaint. The law is that an agent cannot delegate his authority, and if Williams was the vice principal, or representative of the defendant, he could not delegate that authority to another; and the defendant would not be liable in trespass for the act of another employé, unless that other employé was clothed with authority by the defendant to do the act complained of." The court then submitted to the jury its general charge, the following part of which was excepted to by the defendant: "Here was a corporation engaged in the business of transmitting money from abroad to people here, and it had a general manager and a general superintendent here. I charge you as a matter of law that the general superintendent in the management of that business had the right, within the line of his duty, if he believed that a person had obtained money from the telegraph company by false pretense that had been sent here for transmission, to act for the corporation and cause his arrest, and the corporation would be responsible for compensation, if the arrest was wrongful."

The trial resulted in a verdict and judgment for the plaintiff, for the revision of which the defendant brought the cause to this court by writ of error.

E. K. Campbell, for plaintiff in error.

Frank S. White, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge, after stating the case, delivered the opinion of the court.

It is evident that the cause was submitted to the jury on the theory that the first and third counts of the complaint were in trespass for false imprisonment, and that the second was in case for malicious

prosecution. And, indeed, such was the attitude of the suit, as made by the pleadings in their original form, but the amendment of the second count eliminated malicious prosecution as a cause of action and converted that count into one, also, of trespass for false imprisonment. As the second count stood originally, it charged that the defendant caused the plaintiff to be arrested under a warrant issued by C. W. Austin, chief of police, etc., and hence contained apt words to charge a case against the defendant for malicious prosecution. Thus it was said by the Supreme Court of Alabama in Rich v. McInerny, 103 Ala. 351, 352, 15 South. 665, 49 Am. St. Rep. 32:

"If the imprisonment is under legal process, but the prosecution has been commenced and carried on maliciously and without probable cause, terminating in the discharge of the defendant, it is malicious prosecution, and not false imprisonment. 7 Am. & Eng. Enc. Law. 663. The action for damages for false imprisonment is in trespass, for malicious prosecution, in case."

See, also, Ragsdale v. Bowles, 16 Ala. 62.

And by the same court it was said in Davis v. Sanders, 133 Ala. 278, 32 South. 499:

"The complaint contained two counts; the first being in Code form (No. 19 p. 946, Code 1896) for false imprisonment; the second being the same, with additional averments of matters showing aggravation. Both counts are in trespass. Ragsdale v. Bowles, 16 Ala. 62; Sheppard v. Furniss, 19 Ala. 760; Holly v. Carson, 39 Ala. 345; Rhodes v. King, 52 Ala. 272; Rich v. McInerny, 103 Ala. 345, 15 South. 663, 49 Am. St. Rep. 32; 13 Ency. Pl. & Pr. 427, 428, 429, note 1. The amendment of the second count by the additional averment that 'said charge before 'the commencement of this action- had been judicially investigated and said prosecution ended and the plaintiff discharged,' did not change the character of the count from one in trespass for false imprisonment to one in case for malicious prosecution. As amended, it was still wanting in averments essential to constitute a count for malicious prosecution. An averment of the issuance of process properly describing it, and the plaintiff's arrest and imprisonment by virtue thereof, is essential in an action on the case for malicious prosecution."

From a perusal of the general charge of the court it will be readily observed that, obviously through inadvertence of the learned judge, the attention of the jury was mainly directed to the count for malicious prosecution, which had, as we have seen, disappeared from the pleadings, and no longer constituted an issue in the case. And it is reasonably clear that the charge thus given had the effect of misleading and confusing the jury upon the real issues before the court to the prejudice of the defendant. Instructions to a jury must be based upon, and be applicable to, the pleadings and evidence. They should be neither broader nor narrower than the pleadings, but should be predicated of all the issues raised by the pleadings and supported by the evidence, and they are equally faulty whether they enlarge or restrict the issues. 11 Enc. Pl. & Prac. pp. 158–160, and authorities cited. It may be further observed that where the complaint is in trespass for false imprisonment, and it is alleged that the arrest was caused, by the party complained of, with malice and without probable cause, the proof should establish the existence of those elements to authorize a recovery. In speaking of the form of complaint and of the necessity for such proof, it was said by the Supreme Court of

Alabama, in Rich v. McInerny, 103 Ala. 354, 15 South. 666, 49 Am. St. Rep. 32:

"The action is maintainable only when the arrest and imprisonment are done or caused by the defendant, upon a criminal charge, with malice and without probable cause. * * * It alleges arrest and imprisonment of plaintiff, by the procurement of the defendant, upon a charge of larceny, with malice, and without probable cause. Being alleged, these elements must be shown to have existed, to justify a recovery by the plaintiff."

At pages 356, 357, of 103 Ala., page 667 of 15 South. (49 Am. St. Rep. 32), it was further observed:

"The court tried the case upon the theory that the existence of malice and want of probable cause, actuating the defendant to cause the arrest, if he did cause it, were immaterial. We have shown that they were material by reason of being alleged. It was incumbent on plaintiff to satisfy the jury of both."

It is also insisted by the defendant that the trial court erred in giving in charge to the jury that portion of the general charge set out in the statement of the case, and in refusing the special instructions by it requested. The charge of the court was correct as it applied to Williams, who was the general manager and vice principal of the defendant at Birmingham, and who stood for and represented, within the sphere of his authority, the corporate entity itself. Hence, for a trespass committed by him, in his representative character, or for one commanded or authorized by him in such character, suit would be maintainable against the defendant in trespass. Southern Bell Telephone Co. v. Francis, 109 Ala. 224, 19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930. But case, and not trespass, would be the appropriate remedy where the injury grew out of the negligent and unauthorized act of a mere servant working under the immediate control and orders of a superior. This distinction is illustrated by the cases of City Delivery Co. v. Henry, 139 Ala. 161, 34 South. 389; Railway Company v. Freeman, 140 Ala. 581, 37 South. 387; Southern Railway Co. v. Yancy (Ala.) 37 South. 342.

And further it may be said that as the several counts of the complaint are in trespass and count upon the malicious and wrongful act of the defendant corporation, and not upon wrongs committed by its servants, their averments are not supported by evidence showing that the injury complained of was inflicted by a mere subordinate office employé of the defendant, acting without authority from his principal, even should it be assumed that his act was wrongful and malicious. Southern Railway Co. v. Yancy, supra. Nor does this ruling conflict with the admitted and settled principle of law, as held by the Supreme Court of Alabama, that the master, in the appropriate form of action, will be held liable in damages for injuries willfully and intentionally inflicted by the servant while acting within the general scope or line of his employment. City Delivery Co. v. Henry, supra. In the present case the proof was conflicting as to whether Williams caused the arrest of the plaintiff, or whether she was arrested at the command and instigation of a mere subordinate employé in the defendant's office; and, as it was the purpose of the special instruction

to submit this issue to the jury, we are of the opinion that the court erred in refusing it.

For the errors indicated, the judgment should be reversed and the cause remanded for a new trial, and it is so ordered.

Reversed and remanded.

SHELBY, Circuit Judge (dissenting). The facts of the case, as disclosed by the record, are sufficiently stated in the charge of the trial judge, which is copied in a note below.[1] The verdict of the jury was for the plaintiff on each of the three counts in the complaint, and it assessed her damages at $1,200.

In the opinion just read the judgment of the Circuit Court is reversed, chiefly because the trial court treated the second count as one in case for malicious prosecution, while this court decides it should have treated it as one in trespass for false imprisonment. The second count at first read that the defendant caused the plaintiff to be arrested "under a warrant issued," etc. The words referring to a warrant were stricken out by amendment, and these words inserted: "Without a warrant by a policeman of the city of Birmingham for a violation of an ordinance of said city." Notwithstanding the amendment, the Circuit Court, in its charge to the jury, treated the count as an action on the case for malicious prosecution. There were two other counts for false imprisonment, and the charge given related to both false imprisonment and trespass.

The main question is whether or not that action of the court is reversible error. I think not, for these reasons: After the count was amended the plaintiff in error treated it as one in case; one of the grounds of demurrer to the amended complaint being, "the first count is in trespass and the second count is in case, and there is consequently a misjoinder," etc. The defendant company in that way formally took the position that the count was an action on the case, and never during the trial below intimated any change of mind on that subject. The court charged the jury on that theory, and no exception was taken to the charge that would point out to the trial court the alleged error. It is true that the court was asked to charge the jury "that, if they believe the evidence, they cannot find for the plaintiff on the second count of the complaint," but the same charge was asked by the defendant as to the first and third counts, and no hint was given the trial judge that the attorney for the defendant below had changed his opinion as to the second count's being in case and not in trespass. If the point had been suggested, the second count could have been stricken out and the complaint would have had two counts left, both for trespass, on which the case could have been submitted to the jury. The fact is, as shown by the record, that the defendant company's attorney held the second count to be one in case, and claimed that there was a misjoinder, overlooking the statute which provides that trespass and case may be joined when they relate to the same subject-matter. Ala. Code (1896) § 3293.

[1] See note at end of case.

It is clear that ordinarily an unauthorized arrest without warrant is the foundation of an action in trespass and not case, and that a warrant is essential in an action for malicious prosecution. But the Legislature of Alabama, as appears from the record, authorizes a policeman of the city of Birmingham to make arrests without warrant when the accused is charged with a violation of a city ordinance. The defendant company on the trial cited to the court section 10 of an act of the Legislature of Alabama, approved February 11, 1895 (Acts Ala. 1894-95, pp. 527, 532), which conferred on police officers of the city of Birmingham the authority to make arrests without warrant, and offered in evidence the ordinance of the city which also authorized the arrest without warrant. The ordinances so offered are copied in the note. The amendment of the count charged that the defendant caused the plaintiff to be arrested "without a warrant by a policeman of the city of Birmingham for the violation of an ordinance of the city." The idea of the pleader was, that this statute and the ordinance took the place of a warrant. As to whether or not this is true, so as to make a case for malicious prosecution, has not been decided by the court of last resort in Alabama, but the case was tried in the court below on the assumption by both parties, without objection by either, that it did; that is, at least, that the second count was in case for malicious prosecution, and not in trespass for false imprisonment.

I do not think a party should be permittted to obtain a reversal by taking one position in the trial court and another antagonistic position in the appellate court. It is wholly unfair to permit a reversal to be obtained in that way. Consistency is a jewel even in the trial of a law suit. When a party assumes a certain position in a legal proceeding, he cannot be permitted afterwards, when it is to his interest to do so, to assert the contrary. The defendant company in the court below asserted that the second count was in case, the plaintiff acquiesced, and the court accepted this assertion as correct. Here it asserts that the count is in trespass. I do not think the plaintiff in error should be permitted to gain any advantage by such a change of position.

In Walton v. Chicago, etc., Ry. Co., 56 Fed. 1006, 6 C. C. A. 223, the court said:

"It is a well-established doctrine that the parties to a suit must act consistently, and that they will not be heard to complain of errors which they have themselves committed or have induced a trial court to commit."

In New York Elevated R. R. v. Fifth National Bank, 135 U. S. 432, 441, 10 Sup. Ct. 743, 34 L. Ed. 231, the court held that a party cannot take exception in the appellate court to a ruling of the trial court which was made by his procurement or with his acquiescence. In Snyder v. Snyder, 142 Ill. 60, 67, 31 N. E. 303, the court held that if the theory on which the trial court proceeded was not the correct one, it having been adopted at the request of the defendant, she could not complain in the appellate court of the action of the trial court. In Hudson v. Railway Co., 101 Mo. 13, 30, 14 S. W. 15, the defendant took a position which was inconsistent with the position taken by him in the trial court, and the Supreme Court said:

"It is quite too late for him to change front in this court, and claim here that the pleadings raised such an issue. Such inconsistent positions will not be tolerated."

It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding and the trial court adopts his position, he may not thereafter, when his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position taken by him. The defendant company having taken the position that the second count was in case, and the court having afterwards charged the jury on that theory, without objection or exception by either party, it should not in this court be permitted to obtain a reversal of the judgment by asserting that the second count is in trespass and assigning that the court erred in the charge which conformed to the theory on which the defendant company sought to have the case tried. This doctrine is uniformly sustained by both the federal and state courts. Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693; Davis v. Wakelee, 156 U. S. 680, 691, 15 Sup. Ct. 555, 39 L. Ed. 578; Shepperd v. State, 94 Ala. 102, 105, 10 South. 663; Marquette, etc., R. R. Co. v. Marcott, 41 Mich. 433, 2 N. W. 795; Needham v. King, 95 Mich. 303, 313, 54 N. W. 891; Brooks v. Laurent, 98 Fed. 647, 655, 39 C. C. A. 201; Abbot v. Wilbur, 22 La. Ann. 368.

I do not think the court erred in refusing to give the special charge numbered 4. Conceding that it states a correct legal proposition, it was not error for the court to refuse to give it, because Williams, the general manager of the defendant company, testified in effect that he directed the detention of the plaintiff. He said:

"I did give Thornton authority to send for this woman [the plaintiff]. Told him to send for her. Sent a messenger boy with a message to tell her that we had some more money for her, to get her to the office. We didn't have any more money there for her. I think I gave the messenger boy the instructions myself. I told him to tell this woman a falsehood, as I thought it was necessary under the circumstances. I think it is proper to tell them when necessary to protect myself. That is all I remember I said to the boy I sent. I don't remember what time in the day I sent it—late in the evening, I think. I didn't say anything to Thornton at that time about taking charge of the plaintiff when she came. I spoke to him over the telephone that night; told him to get the money from the woman. He told me the woman said she didn't have any money. Said she was there in the office, and I told him to detain her until he got it."

This admission, taken in connection with the evidence of the several other witnesses, left no question to be submitted to the jury as to who directed the plaintiff's detention. The fact that Williams did not know she was put in jail is immaterial. He knew she was detained by his direction, and he went next morning to the court where she was held for trial.

In view of the evidence before the court, I do not think the learned trial judge was called on to charge the jury upon the hypothesis that the detention was caused by some other and subordinate agent of the company. The refusal to give a charge asserting a correct legal proposition does not constitute error when the evidence shows without substantial dispute that the theory presented by the charge is not applicable

to the case. Coffin v. U. S., 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109.

The case was fairly tried and the jury was clearly and impartially instructed, and I do not think the verdict and judgment should be disturbed.

## On Petition for Rehearing.

PER CURIAM. No one of the judges who joined in the decision of this case desiring a rehearing, the same is refused.

### Note 1.

JONES, District Judge, charged the jury as follows:

"This complaint contains what lawyers call three counts, three different ways of stating the grievance or complaint of the plaintiff. The first and third counts are what the law calls counts for false imprisonment.

"False imprisonment is the legal restraint of a person against his will. For instance: I might have stolen something and might be guilty, yet, if I was illegally restrained of my liberty on that account, the person doing it would be guilty of false imprisonment. I want you to bear that distinction in mind, and not confuse these counts with the second count, which is an action for malicious prosecution, and is governed by different considerations. Now, you understand that false imprisonment is merely the illegal restraint of a person against his will.

"Let us take that up first. Was there any false imprisonment in this? I charge you that, under the charter of the city of Birmingham and the law of Alabama, it does not make any difference in this case, so far as the legality of the arrest is concerned, whether there was a warrant or not. It is of no consequence in this case.

"So, then, the question you are to consider, so far as this branch of the case is concerned, is this: How did that arrest come to be made? Was it made in pursuance of the direction and command of the defendant by the police officer, without the exercise of his own independent judgment and conscience as to whether the party ought to be arrested? An officer may act not merely on his own knowledge, but upon any information that comes to him from a reputable source that is calculated to carry to his mind the conviction that there is probable cause for believing the person guilty of the offense. Otherwise, in very many instances, the parties would evade justice and get away while one is getting a warrant; and that is the reason the law recognizes an arrest without a warrant. What was the moving cause of this arrest? Did the police officer make the arrest at the command of the defendant's agents against his judgment, or was the arrest, when the charge was made, the product of his conscientious judgment and belief, after hearing all the facts, that this was a case where there was a probable cause for believing the party guilty? If that was the fact, then there would not be false imprisonment, because the arrest would be lawful. On the other hand, if the policeman did it at the dictation and command of the defendant—if that was the moving cause, and not because of his belief that there was probable cause of her guilt—then the defendant would be guilty of false imprisonment.

"Next, we come to the malicious prosecution: In order to make out that offense, the party must have acted with malice, and without probable cause. If he has probable cause, it doesn't make any difference about his malice, because probable cause is enough to authorize the arrest of a person for a crime, and when a person is acting on probable cause and procures the arrest of another, he is not guilty of malicious prosecution, although his motive may have been very bad. Probable cause of itself, alone, is always a defense to this action.

"Now, what were the facts? You are the judge of the facts. You have heard all the testimony, and, in order to satisfy yourselves of what happened, you will have to solve that question by your knowledge of human

nature, and of the habits and customs of people, under similar circumstances, in such transactions in view of all that has been related to you. It seems that there were two Loula Thompsons. The money was sent, according to the evidence, from Jackson, Tenn., from a Thompson up there, to be transferred by telegraph to one Loula Thompson. It seems that defendant's officers sent for the plaintiff first. The plaintiff came there, and the plaintiff was paid $12. The plaintiff was expecting some money from Montgomery according to the evidence. You are the judges of that, however. My recollection is that the plaintiff stated that she had not sent to Jackson, Tenn., and was not expecting any money from Jackson, Tenn. What happened when this money was paid out? You have heard all the testimony. If the plaintiff was questioned as to where she was expecting this money from, and stated, in answer to questions (it is for you to determine, and not the court), that she was expecting money from Jackson, Tenn., and that she was the person for whom the money was intended, then that would be a false pretense, although her name was Loula Thompson, the name of the person for whom the money was sent. On the other hand, if the telegraph company, knowing she had telegraphed to Montgomery to her people there to send her money on account of her house being burned, offered her the money, and did not inquire of her about Jackson, Tenn., then she would not have been guilty of false pretense in taking this money, although, as it turned out, it was not intended for her. In order to constitute a false pretense, she must be guilty of some deception by stating or pretending there were existing facts, or some past fact which did not in fact exist, that was acted on by the other side, and which was one of the causes that induced the telegraph company to part with its money. If there was probable cause for believing that she obtained the money by false pretense, then the company was not under obligations to send her back home to get the money, or to let her go back home. If a party has committed an offense of that sort, the repayment of it, as far as the law is concerned, doesn't blot out the offense, or pardon the offense. You have the substance of this case, so far as the malicious prosecution is concerned. Was there probable cause for believing—you have heard the testimony—was there probable cause for believing that she misrepresented the facts as to her being the Loula Thompson for whom this money was intended? Did she tell those people, as I have already explained to you, that she was expecting money from Jackson, Tenn.? If she did, she was guilty of obtaining money under false pretenses under this evidence. But, if she did not, and the telegraph company had not informed her that this money was from Jackson, Tenn., and handed it over to her without inquiry, and she believed it came from Montgomery, then she would not be guilty of obtaining money under false pretenses, and there would not be a probable cause for her arrest, although the money was not sent for her.

"Now, then, coming to the last proposition: This arrest, if you should get that far and find the defendant's act unwarranted, must be the act of the defendant. You cannot see a corporation. You cannot put your hands on it. It is a fiction of the law, but it acts by human agents. Here was a corporation engaged in the business of transmitting money from abroad to people here, and it had a general manager and a general superintendent here. I charge you as matter of law that the general superintendent, in the management of that business, had a right, within the line of his duty, if he believed that a person had obtained money by false pretense from the telegraph company that had been sent here for transmission to others, to act for the corporation and cause his arrest, and the corporation in that event would be responsible for compensation to the plaintiff if the arrest was wrongful; that is, as I have already explained to you, either a lawless arrest, or with malice and without probable cause.

"A corporation cannot be responsible in a case like this for what we call 'smart' money, or vindictive damages. Sometimes the jury, for the good of society, when some outrageous lawlessness is committed, may award not only compensation to a party, but may go further for the benefit of the public, and say to the law-breakers: 'I will sting you, and put a little more on

you. I will chastise you and make you smart; and, although the injured party has not been damaged the whole amount, I will give the additional sum for the public good.' This is not a case of this sort under the decision of the Supreme Court of the United States. If you reach the conclusion, under any phase of the case, about which you have been instructed, that damages ought to be awarded, you can only award compensation; that is, to make the party whole. Included in compensation, though, you can give what you consider conscientiously a fair amount for the mortification and physical discomfort to which the party was subjected by arrest, and for the sickness, if any was caused thereby, and any expense, although I don't believe there is any proof of expense to which the party was put in getting free of the arrest. I believe that covers the case."

### Note 2.

The following are the portions of the Code of the city of Birmingham offered in evidence:

"Sec. 100. Arrest Without Warrant. When and By Whom Made. It is the duty of the marshal and every policeman to arrest, without warrant, all persons found violating any ordinance of the city, or whom he has reason to believe has violated any city ordinance, all persons found disturbing the peace by disorderly conduct, all persons found drunk on the public streets, or in any public place in the city, and all persons found under suspicious circumstances, who fail to give satisfactory account of themselves. And said officers shall have authority to enter any house, inclosure, or other place in which they have reason to believe that any person is committing, or about to commit, a violation of the city laws."

"Sec. 579. False Pretense. Any person who by false pretense or token, and with the intent to injure, or defraud, obtains from another any money or other personal property, or thing of value, must, on conviction, be fined not less than one, nor more than one hundred dollars."